Porter, Appellant, *v.* City of Oberlin et al., Appellees.

[Cite as Porter v. City of Oberlin, 1 Ohio St. 2d 143.]

144

(No. 38734—Decided March 10, 1965.)

*Messrs. Fauver & Fauver* and *Mr. Scribner L. Fauver,* for appellant.

*Messrs. Severs & Glavas* and *Mr. G. L. Severs,* for appellees.

TAFT, C. J.   Because of the concurring opinion by Judge Schneider, we will first consider whether plaintiff has a right to maintain this action.

It is alleged in the petition that plaintiff is a taxpayer of the city of Oberlin and brings this action on behalf of the city, that as such taxpayer plaintiff duly requested in writing the city solicitor to bring this action, and that said solicitor declined in writing to bring the action.   Defendant's answer admits that plaintiff is a taxpayer of the city, and that the solicitor "did decline in writing to bring this action."

It is further alleged in the petition and denied in the answer "that the administration of said ordinance will entail the expenditure of funds of the city" and involve abuse of its corporate powers and misapplication of corporate funds.

The prayer of the petition is "for a declaratory judgment as to the validity of" the ordinance and for an injunction against its enforcement.

146

Section 733.59, Revised Code, provides in part:

"If the solicitor fails, upon the written request of any taxpayer of such municipal corporation, to make any application provided for in Sections 733.56 * * * such taxpayer may institute suit in his own name, on behalf of the municipal corporation. * * *"

Section 733.56 provides in part:

"The solicitor shall apply, in the name of the municipal corporation * * * for an order of injunction to restrain the misapplication of funds of the municipal corporation, the abuse of its corporate powers * * *."

As stated in paragraph six of the syllabus of *Elyria Gas and Water Co.* v. *City of Elyria* (1898), 57 Ohio St. 374:

"The abuse of corporate powers, within the purview" of Section 733.56 "*includes* the unlawful exercise of powers possessed by the corporation, as well as *the assumption of power not conferred.*" (Emphasis supplied.)

There is evidence in the record that the enforcement of this ordinance will involve the expenditure of public funds. Even without such evidence, a reading of the ordinance makes it apparent that such an expenditure would be involved.

In our opinion, therefore, plaintiff has a right to maintain this action.

Section 3 of Article XVIII of the Ohio Constitution confers upon "municipalities * * * authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police * * * regulations, as are not in conflict with general laws."

Therefore, unless the Oberlin fair housing ordinance conflicts with the charter of Oberlin, with general laws of the state or with some limitation on legislative power set forth in the Constitution of Ohio or the Constitution of the United States, its validity must be sustained.

Plaintiff contends first that the Oberlin fair housing ordinance violates the provisions of the Ohio Constitution for the reason that it constitutes an unreasonable deprivation of individual property and contract rights.

Plaintiff relies on that portion of Section 1, Article I of the Ohio Constitution, which reads that "All men are by nature

free and independent, and have certain inalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing, and protecting property * * *," and on that portion of Section 19, Article I, which provides that "Private property shall ever be held inviolate, but subservient to the public welfare. * * *"

The Oberlin fair housing ordinance does not interfere with any rights to acquire or possess property. On the contrary, its obvious purpose is to support such rights by preventing interference therewith on the grounds of race, creed or color.

Plaintiff's argument is that the ordinance imposes restrictions on an owner's freedom to dispose of his property by sale, and that "property," as used in those constitutional provisions, includes an unrestricted right of disposal. He argues also that the ordinance imposes a limitation on a landowner's freedom to contract on his own terms with whom he pleases.

However, unlike the ordinance involved in *Buchanan* v. *Warley* (1917), 245 U. S. 60, 62 L. Ed. 149, 38 S. Ct. 16, the Oberlin ordinance does not limit those to whom a sale or rental may be made. On the contrary, it prohibits the owner from so limiting those to whom such sale or rental may be made and thereby limiting the demand for what he may have to dispose of.

Furthermore, unlike the legislation involved in some other cases, the ordinance here involved does not require a sale,—it merely provides for a fine not exceeding $100 and costs.

Actually, the only limitation imposed by this Oberlin ordinance on a landowner's right of disposal or on his right to contract is the requirement that he shall not discriminate against any person purely because of race, creed or color. He may, as between persons, require a difference in treatment in the sale or rental of his property as long as he has valid reasons for such a difference other than the race, creed or color of such persons.

In substance, plaintiff's argument is that the constitutional provisions upon which he relies give an owner the right to discriminate against another person in the sale or rental of his property or in the terms, conditions or privileges of such sale or rental, and to so discriminate purely because of race, creed or color. To permit such discrimination would obviously,

148

to use the words of Section 1, Article I of the Ohio Constitution, interfere with the "inalienable rights * * * of * * * acquiring * * * property" of the person discriminated against.

Agreements among property owners imposing restrictions against occupancy of their properties by persons other than those of the Caucasian race were involved in *Shelley* v. *Kraemer* (1948), 334 U. S. 1, 92 L. Ed. 1161, 68 S. Ct. 836; *Hurd* v. *Hodge* (1948), 334 U. S. 24, 92 L. Ed. 1187, 68 S. Ct. 847; and *Barrows* v. *Jackson* (1953), 346 U. S. 249, 97 L. Ed. 1586, 73 S. Ct. 1031.

In *Shelley,* it was held that a state court injunction enforcing such agreement against a Negro was forbidden by the part of the Fourteenth Amendment to the Constitution of the United States providing that "No state shall * * * deny to any person within its jurisdiction the equal protection of the laws."

In *Hurd,* it was held that such an injunction should not be given by a District of Columbia federal court because it would be against the public policy of the United States to permit a federal court in the District of Columbia to give equitable relief on such an agreement where the Constitution of the United States would prevent a state court from giving such relief.

In *Barrows,* it was held that one party to such an agreement could not maintain an action for damages against another party thereto for breach of the agreement.

Thus, if the claimed right of an owner to discriminate was acquired by contract, both the Constitution and the public policy of the United States would prevent its enforcement. It would be difficult to conclude with reason that legislation could not provide against the assertion of such a so-called right even where not acquired by contract.

As stated in the opinion in *Railway Mail Assn.* v. *Corsi, Commr.,* 326 U. S. 88, 93, 89 L. Ed. 2072, 2076, 65 S. Ct. 1483, 1487:

"* * * We have here a prohibition of discrimination in membership or union services on account of race, creed or color. A judicial determination that such legislation violated the Fourteenth Amendment would be a distortion of the policy manifested in that amendment which was adopted to prevent state legislation designed to perpetuate discrimination on the basis of race or color."

This court has frequently held that an exercise of the police power may be valid even though it does interfere with property and with contract rights if such exercise of the police power bears a real and substantial relationship to the general welfare of the public and if it is not unreasonable or arbitrary. Furthermore, we have held that the determination by the legislative body, in its enactment of legislation, that there is such a relationship will not be disturbed unless clearly erroneous. *Benjamin* v. *City of Columbus* (1957), 167 Ohio St. 103 (paragraph five of the syllabus), 146 N. E. 2d 854; *Teegardin* v. *Foley* (1957), 166 Ohio St. 449, 143 N. E. 2d 824; *Ghaster Properties, Inc.,* v. *Preston, Dir.* (1964), 176 Ohio St. 425, 200 N. E. 2d 328. See *Curtiss* v. *City of Cleveland* (1959), 170 Ohio St. 127, 163 N. E. 2d 682.

In our opinion, such determination, which the Oberlin council is presumed to have made by its exercise of the police power in the enactment of this ordinance, is not clearly erroneous, and the ordinance does not appear to be either unreasonable or arbitrary. Whether legislation of this kind should be adopted will depend largely on local conditions and community needs. The following statement in the syllabus in *Allion* v. *City of Toledo* (1919), 99 Ohio St. 416, 124 N. E. 237, is particularly applicable in the instant case:

"Unless there is a clear and palpable abuse of power, a court will not substitute its judgment for legislative discretion. Local authorities are presumed to be familiar with local conditions and to know the needs of the community."

We conclude, therefore, that the police power clearly includes the power to prohibit the owner of property from discriminating, in its sale or rental or in the terms, conditions and privileges of such sale or rental, against any person purely because of race, creed or color.

This conclusion is also sustained by the following authorities: *Burks* v. *Poppy Construction Co.* (1962), 57 Cal. 2d 463, 370 P. 2d 313; *Lee* v. *O'Hara,* 57 Cal. 2d 476, 370 P. 2d 321; *Massachusetts Commission against Discrimination* v. *Colangelo* (1962), 344 Mass. 387, 182 N. E. 2d 595; *Colorado Anti-Discrimination Commission* v. *Case* (1963), 151 Colo. 235, 380 P. 2d 34; *Martin* v. *New York* (1960), 22 Misc. 2d 389, 201 N. Y.

150

Supp. 2d 111. See, also, *O'Meara* v. *Washington State Board against Discrimination* (1961), 58 Wash. 2d 793, 365 P. 2d 1; *New York State Commission against Discrimination* v. *Pelham Hall Apartments, Inc.* (1958), 10 Misc. 2d 334, 170 N. Y. Supp. 2d 750; *Levitt & Sons, Inc.*, v. *Division against Discrimination* (1960), 31 N. J. 514, 158 A. 2d 177; *Marshall* v. *Kansas City* (Mo. 1962), 355 S. W. 2d 877; *District of Columbia* v. *John R. Thompson Co., Inc.* (1953), 346 U. S. 100, 97 L. Ed. 1480, 73 S. Ct. 1007; *Katzenbach* v. *McClung* (decided December 14, 1964), 13 L. Ed. 2d 290, 85 S. Ct. 377; *New Jersey Home Builders Assn.* v. *Division on Civil Rights* (1963), 81 N. J. Super. 243, 195 A. 2d 318.

Plaintiff contends also that the necessary effect of the ordinance upon real estate brokers, financial institutions and owners of five or more dwelling units is unduly oppressive and goes beyond the necessity of the situation.

The ordinance definitions are such that any person is included as a real estate broker, salesman or agent if he has five or more Oberlin real estate listings or holds himself out as engaged in the business of selling, purchasing or renting Oberlin real estate of five or more persons. The effect of this definition and of a comparable ordinance definition of a lending institution is to subject to the prohibitions of the ordinance anyone who wants to do any business in lending money on or acting as a broker, agent or salesman of Oberlin real estate. On the other hand, an owner of less than five dwelling units is not subject to the prohibitions of the ordinance although an owner of five or more such units is.

As to brokers, it is pointed out that a broker cannot, without violating the ordinance, represent an owner of less than five dwelling units who wants to discriminate against prospective buyers or renters of his property "purely because of race, creed or color," although there is no prohibition against such owner of less than five dwelling units doing so. Thus, compliance with the ordinance will deprive such a real estate broker of a substantial portion of his business. Plaintiff asks why this should be done. The answer is that, if an owner of real estate who is not prohibited from so discriminating cannot secure a real estate broker to represent him, such owner will be discouraged from indulging in such discrimination.

It is contended next that there "was absolutely no evidence offered * * * and no legislative findings by city council indicating that any of the financial institutions in Oberlin had been guilty of discriminatory practices," and that therefore "the * * * ordinance as applied to financial institutions is a pointless gesture and * * * as such * * * is arbitrary and discriminatory and should be declared invalid."

In order to enact legislation prohibiting certain action, a legislative body is not required to make an express finding in the legislation that someone has previously been doing what the legislation will prohibit. Those who seek to sustain the validity of such legislation are not required to offer evidence tending to prove that anyone had previously been doing what the legislation will prohibit. On the contrary, those who claim that such legislation is void because there is no need for it have a heavy burden of negativing every reasonable basis which might support the presumption that the enactment of the legislation included a determination by the legislative body that there was a reasonable need therefor, i. e., that someone had previously been doing, or that someone might otherwise be likely to do, what the legislation will prohibit. See 16 American Jurisprudence 2d 390, Section 172; *State, ex rel. Dickman,* v. *Defenbacher* (1955), 164 Ohio St. 142, 128 N. E. 2d 59.

Plaintiff contends also that there is no reasonable basis for treating owners of five or more dwelling units as subject to the prohibitions and penalties against discrimination specified in the ordinance if owners of less than five of such units are not to be subject thereto, especially where there is no requirement that the units used to compute the number of five must be contiguous.

Both the Constitution of the United States (Fourteenth Amendment) and the Constitution of Ohio (Section 2, Article I) provide for "equal protection."

Simply calling a group of persons selected for special legislative treatment a class does not satisfy the requirements of equal protection. However, the foregoing constitutional provisions do not prohibit all class legislation. They do require that such legislation must apply alike to all persons within a class, and reasonable grounds must exist for making a distinc-

tion between those within and those without a designated class. Within the limits of these restrictive rules, a legislative body has a wide measure of discretion. *City of Xenia* v. *Schmidt,* 101 Ohio St. 437, 130 N. E. 24; *Benjamin* v. *City of Columbus,* 167 Ohio St. 103, 117, 146 N. E. 2d 854.

Equal protection provisions of the federal and Ohio Constitutions do not require resort to close distinctions or the maintenance of a precise scientific uniformity and do not prohibit distinctions not shown to be substantial or which are based on differentiations not shown to be arbitrary or capricious. *National Tube Co.* v. *Peck* (1953), 159 Ohio St. 98, 111 N. E. 2d 11.

Furthermore, it is generally recognized that a legislative body, when it chooses to act to correct a given evil, need not correct all the evil at once, but may proceed step by step. *Yee Bow* v. *City of Cleveland,* 99 Ohio St. 269, 124 N. E. 132; *City of Xenia* v. *Schmidt, supra; Benjamin* v. *City of Columbus, supra.*

Certainly, a legislative body is not unreasonable because it elects to proceed slowly in such an emotionally involved field as race relations.

An owner of five or more dwelling units, who believes in discrimination purely on the basis of race, creed or color and who would desire to practice such discrimination if he sold or rented such units, is potentially a more dangerous threat to those who will be hurt by such discrimination than the owner of four or less such units who has like beliefs and desires. In our opinion, therefore, there is a reasonable basis for classifying those who own five or more dwelling units separately from those who own less than five, especially since the ordinance has other provisions which have a strong tendency to discourage those who own less than five from indulging in the prohibited discrimination, *i. e.,* the provisions which make it impossible for them to secure the help of a broker in selling or renting their real estate.

Plaintiff finally contends that Section 3(f) of the ordinance is invalid because it delegates arbitrary power to council either to dismiss the complaint or to refer it to the solicitor.

Section 1 of the ordinance contains definitions, Section 2

specifies the "prohibited acts," and Section 3 deals with "enforcement procedure."

The latter section provides for (1) a written complaint to the housing renewal commission charging a violation of any of the prohibitive provisions, (2) an investigation of the complaint and (3) an attempt by the commission to eliminate any unlawful practice it finds "by conciliation and persuasion." It then provides that, if "the commission fails in the conciliation proceedings, it shall forward all papers including the complaint, investigation, record of conciliation proceedings, factual findings and recommendation to the city council"; and further provides that until then everything is to be "confidential" and the "proceedings * * * shall not be made public."

No complaint is made either by plaintiff or *amici curiae* about the foregoing provisions of Section 3. Plaintiff's complaint relates only to the remainder of the section which reads:

"(f) The city council shall review the proceedings and shall either dismiss the complaint or refer same to the city solicitor for appropriate legal action under this ordinance."

Section 4 of the ordinance specifically provides that "any person who violates any of the provisions of this ordinance shall be subject to a fine not exceeding one hundred dollars * * * and costs."

Provisions for prosecution for violation of a municipal ordinance are contained in Sections 2935.09 and 2935.10, Revised Code. See *State* v. *Maynard* (1964), 1 Ohio St. 2d 57.

There is nothing in the ordinance to indicate that, even if council did dismiss a complaint, such dismissal would prevent a prosecution for a violation of the ordinance.

The only effect of subparagraph (f) of Section 3 would be to interpose another administrative obstacle between a claimed violation of the ordinance and the city's efforts to prosecute such a violation. Prosecuting officers now decide whether to institute criminal proceedings with respect to misdemeanors. *State, ex rel. Skilton,* v. *Miller* (1955), 164 Ohio St. 163, 128 N. E. 2d 47.

Until a prosecuting officer determines to institute a prosecution for violation of this ordinance, no compulsion of any kind is asserted against a claimed violator of that ordinance. There-

after, he will be in court with all the rights and protections afforded by our laws to anyone charged with a crime.

However, a majority of the court (Judges Matthias, Herbert, Schneider and Guernsey) are of the opinion that Section 3 is invalid and must, therefore, be declared void. Even though Section 3 is invalid, Section 5 of the ordinance specifically provides that "if any * * * section or part thereof is held * * * unconstitutional * * * such * * * unconstitutionality * * * shall not affect or impair any of the remaining * * * [part of the ordinance]." Thus, even without Section 3, the ordinance is still enforceable.

For the foregoing reasons, the judgment of the Court of Appeals, so far as it sustains the validity of Section 3 of the ordinance, is reversed, and otherwise that judgment is affirmed.

*Judgment accordingly.*

ZIMMERMAN, MATTHIAS, O'NEILL and GUERNSEY, JJ., concur.
HERBERT, J., concurs in part.
SCHNEIDER, J., concurs in the judgment.
GUERNSEY, J., of the Third Appellate District, sitting by designation in the place and stead of BROWN, J.

GUERNSEY, J., concurring. I concur in the syllabus and in all of the majority opinion written by Chief Justice Taft except that part thereof which could be considered as a determination that any part of section 3 of the ordinance constitutes valid legislation.

By virtue of Section 1, Article IV of the Ohio Constitution, "the judicial power of the state is vested in * * * [certain named courts], and such other courts inferior to the Courts of Appeals as may from time to time be established by law." Under Section 19, Article IV, "the General Assembly may establish courts of conciliation, and prescribe their powers and duties * * *." In the case of *State, ex rel. Cherrington, Pros. Atty.*, v. *Hutsinpiller*, 112 Ohio St. 468, it was determined by this court that the municipalities of this state have no power, by charter or otherwise, to create courts and appoint judges thereof, and thus seek to exercise judicial power in contravention of the Constitution.

Notwithstanding that the crime is complete by the occurrence of a prohibited act of discrimination, the ordinance here attempts to require a "Housing Renewal Commission" to "attempt to eliminate the unlawful housing practice by conciliation and persuasion." If it fails in so doing, it is then required to forward all papers and its recommendation to the city council which "shall review the proceedings and shall either dismiss the complaint or refer same to the city solicitor for appropriate legal action under this ordinance." No procedure before either body is set forth nor are any criteria established to determine the success of conciliation by the commission or to prescribe the grounds for the dismissal of a complaint by council. Indeed, the Housing Renewal Commission is not established by the ordinance, but according to the testimony of the city manager of the city of Oberlin the commission was established by resolution of council, and a proposed ordinance designed to establish the duties of the commission has never been presented to, or adopted by, council. To me the only reasonable conclusion which may be derived from the provisions of section 3 of the ordinance is that if conciliation by the commission is successful, or if council dismisses the complaint, then prosecution of the complaint shall thereby terminate. If such is not the intent of these provisions, there remains only slight reason, if any, for their existence. In either event, such termination of an alleged violation would appear to be, in legal effect, the acquittal of a crime and would constitute the exercise of judicial power which council had no authority to bestow upon the commission or to enact unto itself.

Moreover, if section 3 is not invalid as being contrary to the Constitution, it is invalid because it lacks sufficient definiteness and certainty to be enforceable.

The constitutionality of the prohibitory provisions of the ordinance might have been subject to a different determination had they purported to affect the validity of a sale, lease, rental, or financing, of a housing accommodation, consummated after its adoption. However, the ordinance does not purport to affect such validity, even when discrimination has occurred and the prohibition and the penalty for a violation thereof relate solely to the acts of discrimination, as defined in the ordinance.

The ordinance may not be effective to prevent the abuses at which it is aimed in that it may not deter the person who chooses to discriminate and take his chances on being penalized. Moreover, it may be unusually difficult to prove the commission of a prohibited act of discrimination. But these are matters not before us and matters which do not bear on whether by the adoption of this ordinance the municipal council has exercised the police power in either an unreasonable or arbitrary manner. As so limited in its application, and with the exception of section 3, the ordinance constitutes a valid and constitutional exercise of police power by the municipal council.

I concur with Chief Justice Taft's conclusion that the provisions of section 3 are severable from the remainder of the ordinance.

MATTHIAS, J., concurs in the foregoing concurring opinion.

HERBERT, J., concurs in Judge Guernsey's concurring opinion relative to Section 3 of the ordinance and continues:

Subparagraph (e) of Section 1 and subparagraph (f) of Section 2 of said ordinance relative to lending institutions are invalid in that the inclusion of such lending institutions in said ordinance is an improper exercise of the police power.

In its finding of facts, the Court of Appeals said in its opinion:

"There is no evidence indicating discrimination in banking practices." Appellees agree with this finding in their briefs.

It appears clear that there has been absolutely no discrimination by these financial institutions of Oberlin in the past, nor is there any evidence or indication of any discrimination at the present time, nor will there be any such discrimination as mentioned in the ordinance tolerated in the future by reason of federal statutes and agencies. These lending agencies are not only subject to control by the banking laws of Ohio but, as participants in the Federal Insurance Deposit Corporation, they are under federal supervision and control.

3 Farrell-Ellis, Ohio Municipal Code (11 Ed.), at page 279, Section 9.5, lays down this recognized principle of law:

"From a consideration of the many cases dealing with the exercise of police power Judge Bell, speaking for the Supreme Court, in *Cincinnati* v. *Correll* (141 Ohio St. 535), reached the conclusion that the standards to determine the validity of police regulations could be stated thus, 'Laws or ordinances passed by virtue of the police power which limit or abrogate constitutionally guaranteed rights must not be arbitrary, discriminatory, capricious, or unreasonable and *must bear a real and substantial relation to the subject sought to be obtained, namely the health, safety, morals, or general welfare of the public.*'" (Emphasis added.)

The banks here in question have in no way disturbed the health, safety, morals or general welfare of the public of Oberlin. On the contrary, these banks—it is conceded—have an exemplary record of avoiding any discrimination whatsoever between the races. To cast suspicion upon such respected institutions in a penal ordinance is an invalid and unconstitutional exercise of the police power.

SCHNEIDER, J., concurring in the judgment. I concur with the view of the majority that Section 3 of the ordinance is constitutionally repugnant and is severable from the remainder of the ordinance, although I am of the opinion that the function of the court to make even that determination in this case hangs by a brittle thread.

The single plaintiff here is a citizen of, a taxpayer in, and an owner of two parcels of real estate in the city of Oberlin. Only one parcel contains a dwelling, and that is a single-family home occupied by the plaintiff. But, the plaintiff is neither an "owner" nor an "agent" nor a "lending institution" as defined in the ordinance. He does not allege or prove that he has any intention of coming within the purview of those terms, nor does he make any complaint that he might be unable, upon the future sale of his property, to engage a broker or agent who would be unfettered by the restrictions of the ordinance. Consequently, as an individual he is not in any way subject to or affected by any of the provisions of the ordinance, to any greater extent than all the other citizens and taxpayers in that city generally. Cf. dissenting opinion of Mr. Justice Butler in

158

*Tennessee Electric Power Co.* v. *Tennessee Valley Authority*, 306 U. S. 118 (holding complainants did not show required interest and sustaining dismissal of bill), at page 152, where he criticizes the decision of the court for not recognizing that plaintiffs "are not asserting a right held, or complaining of an injury sustained, in common with the general public" but a right peculiar to themselves.

The plaintiff brings this suit solely as a taxpayer, after request upon the city solicitor to bring the action and the refusal of that request, pursuant to Section 733.59, Revised Code. He therefore has the same right of action as the city solicitor if the latter had commenced the action initially or after request. *Cincinnati Street Rd. Co.* v. *Smith*, 29 Ohio St. 291. See, also, *City of Cincinnati* v. *Kellogg, City Mgr.*, 86 Ohio App. 518, affirmed, 153 Ohio St. 291.

We are thus concerned with the question of whether this is an action which the city solicitor could have brought under Section 733.56, Revised Code, which reads as follows:

"The solicitor shall apply, in the name of the municipal corporation, to a court of competent jurisdiction for an order of injunction to restrain the misapplication of funds of the municipal corporation, the abuse of its corporate powers, or the execution or performance of any contract made in behalf of the municipal corporation in contravention of the laws or ordinance governing it, which was procured by fraud or corruption."

At the outset, we can eliminate the third ground for the action stated in the statute. And, I would have preferred to dispose of the first statutory ground for the action under the maxim, "*De minimis non curat lex*" (see *Dennison West 25th Street Improvement Co.* v. *Great Atlantic & Pacific Tea Co.*, 46 Ohio Law Abs. 246), by holding that the purported expenditure of public funds is either so indefinite or would be so insubstantial as not to afford a basis for the action, because the record shows only that, in the enforcement of Section 3 of the ordinance, there is merely a *possibility* that secretarial employees of the city might be utilized, that a number of postage stamps and some stationery belonging to the city might be used or consumed, and that notices might have to be served.

However, a majority of this court has removed Section 3, and the ordinance thus shorn of its investigative procedure stands as a bare criminal sanction, entailing the expenditure of no more public funds than might be involved in any prosecution conducted by the city's police and law departments.

At this juncture, my concurrence with the majority opinion ends because I am unable to perceive any propriety in proceeding to determine the constitutionality of the remainder of the ordinance at the instance of a party whose property rights or business interests will not be touched thereby, much less irreparably damaged.

The court proceeds on the theory that this action raises a question of "abuse of * * * corporate powers" of the city of Oberlin and on the advice of counsel for both parties that such a question permits a determination of constitutionality. It hardly deserves repeating that neither the parties nor their counsel by agreement can confer jurisdiction on the court.

The proper question to be determined is: Does the phrase, "abuse of its corporate powers," as used in Section 733.56, Revised Code, contemplate an action to determine the constitutional validity of an ordinance in a suit brought by a solicitor at his own instance or at the instance of one not directly affected thereby? If the answer is in the affirmative, then the plaintiff here is a real party in interest, substituting for the solicitor who refused his request to proceed. If the answer is in the negative, he is not.

Apart from those cases involving substantial expenditures claimed to be illegal, actions have been maintained by corporate counsel or taxpayers, on the basis of abuse of power, to contest the validity of a city's failure to adopt and use a system of rates for power plants pursuant to statute (*Butler* v. *Karb, Mayor,* 96 Ohio St. 472); of a council's permission to lay pipes in a public street (*Kumler* v. *Silsbee,* 38 Ohio St. 445); of the vacation of a public street (*Zetzer* v. *Lundgard,* 95 Ohio App. 51); of the appropriation of a street for private use without council's permission (*City of Wilmington* v. *Buckley,* 86 Ohio App. 117); of an act claimed to be in violation of the trust upon which title to a public street was held (*United States Bung Mfg. Co.* v. *City of Cincinnati,* 73 Ohio App. 80); and of an

ordinance authorizing a single councilman to execute a development contract (*Sharon Realty Co.* v. *Westlake*, 90 Ohio Law Abs. 175, 184).

*State, ex rel. Sergi,* v. *City of Youngstown*, 68 Ohio App. 254, states that any attempt to circumvent the Constitution amounts to an abuse of power. The action was brought by a taxpayer not specially interested, but the court held that an ordinance carrying penalties for *the failure to obtain a license for* games of skill intended to be operated by the insertion of a slug or coin (which games could easily be converted into gambling devices), not for *the use of* such devices, was invalid *as contravening state law.*

*Elyria Gas & Water Co.* v. *City of Elyria*, 57 Ohio St. 374, states in the last sentence of paragraph six of the syllabus that an "abuse of corporate powers" within the purview of Section 1777, Revised Statutes (now Section 733.56, Revised Code), includes the unlawful exercise of powers possessed by the corporation, as well as the assumption of power not conferred. But this statement cannot be taken as the law of the case because the questions involved were whether ordinances to purchase waterworks and to erect new ones could be combined, and whether the power of determining when bonds should be issued for such purposes could be delegated to the mayor or another person by council. So the questions decided related to the unlawful exercise of powers possessed by the corporation rather than the assumption of power not conferred.

On the other hand, extensive research discloses no Ohio case authorizing a solicitor to contest the constitutionality of a criminal ordinance as an "abuse of corporate powers" in the absence of the question of an expenditure of funds, nor does that research disclose any case authorizing a taxpayer or any other person to raise the constitutional question, where such person claims no special interest or damage to himself or to his property or claims no misapplication of public funds. Indeed, it is impossible to support the logic of plaintiff's position that the city of Oberlin has "abused" a power which he claims it constitutionally cannot possess.

By the holding that Section 3 of the ordinance is unconstitutional, the remainder of this action is removed from the scope

of Section 733.56, Revised Code. Consequently, it is beyond the scope of Section 733.59, and it amounts to a casual request that chancery enjoin the enforcement of a criminal enactment by one who neither alleges nor proves a probability or likelihood of enforcement against him or of injury to him. I cannot believe that the majority of this court would countenance the action if it were so labeled, nor do I believe it should do so in this case. *Troy Amusement Co.* v. *Attenweiler*, 137 Ohio St. 460; *Olds* v. *Klotz*, 131 Ohio St. 447; *Jacob Kauffman Brewing Co.* v. *McElligott, Collr.*, 259 F. 525; *Burton* v. *City of Toccoa*, 158 Ga. 63, 122 S. E. 603.

As to criminal ordinances, the solicitor is not the defender of the public's interest. On the contrary, it is his duty to enforce them. It seems palpably unfair to one who immediately is subject to the sanctions of a newly enacted criminal ordinance that we should permit the law department of a municipal corporation first to bring the enactment to court for its stamp of constitutionality, thus foreclosing the right of the prospective defendant to raise the question of its validity on facts and circumstances peculiar to his own case. If this should be the rule, we open wide the door to serious abuses in our criminal processes.

Speaking of the "self-denying ordinance" of the Supreme Court of the United States that it will exercise its jurisdiction to pronounce a statute void as irreconcilable with the Constitution only as it is called upon to adjudge the legal rights of litigants whose interests entitle them to raise the question in actual controversies (*Liverpool, New York & Philadelphia Steamship Co.* v. *Commissioners of Emigration*, 113 U. S. 33, 39, *Blair* v. *United States*, 250 U. S. 273, 279), Professor Freund finds its rationale in a "conviction that the framework of a traditionally adversary proceeding furnishes a safeguard against premature or ill-advised decisions in the constitutional field. Especially is this true of issues of constitutionality which turn, as they increasingly do, on questions of fact and degree and application to persons and circumstances." Freund, The Supreme Court of the United States (Meridian Press), page 17.

This court would be well advised not only to retain this small measure of self-restraint, but also to attend the further

advice of Mr. Justice Matthews in *Liverpool, supra,* at page 39:
"* * * In the exercise of that jurisdiction, it [the court] is bound by two rules, to which it has rigidly adhered, one, never to anticipate a question of constitutional law in advance of the necessity of deciding it; the other, never to formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied. These rules are safe guides to sound judgment. It is the dictate of wisdom to follow them closely and carefully."

Before speculating that the Supreme Court of the United States has observed these rules more often in the breach than in their observance, the concurring opinion of Mr. Justice Brandeis in *Ashwander* v. *Tennessee Valley Authority,* 297 U. S. 288, at page 341, and the multitude of cases cited therein, should be consulted, especially at page 347, where the following appears:

"5. The court will not pass upon the validity of a statute upon complaint of one who fails to show that he is injured by its operation. *Tyler* v. *The Judges,* 179 U. S. 405; *Hendrick* v. *Maryland,* 235 U. S. 610, 621. Among the many applications of this rule, none is more striking than the denial of the right of challenge to one who lacks a personal or property right. Thus, the challenge by a public official interested only in the performance of his official duty will not be entertained. *Columbus & Greenville Ry.* v. *Miller,* 283 U. S. 96, 99-100. In *Fairchild* v. *Hughes,* 258 U. S. 126, the court affirmed the dismissal of a suit brought by a citizen who sought to have the Nineteenth Amendment declared unconstitutional. In *Massachusetts* v. *Mellon,* 262 U. S. 447, the challenge of the federal Maternity Act was not entertained although made by the Commonwealth on behalf of all its citizens."

See, also, 16 Corpus Juris Secundum, Section 94 (Constitutional Law). For another collection of cases wherein the Supreme Court of the United States has adhered to these rules, see note 46, at 16 Corpus Juris Secundum 315.

I am not unmindful that the prayer of the petition also seeks a declaratory judgment. I do not dispute that a solicitor may obtain the benefit of Chapter 2721, Revised Code, in a *proper* case under Section 733.56. It follows that a taxpayer

may likewise seek a declaratory judgment in a *proper* case under Section 733.59. However, I have already set forth my view that the plaintiff, both individually and as a taxpayer, is a stranger to the issues herein, and the Declaratory Judgment Act retains the rule that an action may be brought only by one who shows that his rights, status, or other legal relations will be affected. *Section 2721.03, Revised Code.*

I would modify the judgment of the Court of Appeals to the extent of requiring that court to issue an injunction restraining the enforcement of Section 3 of the ordinance, and affirm that part of the judgment denying an injunction against enforcement of the remainder of the ordinance, for the reasons stated above. To this extent, I concur in the judgment but differ as to its basis. I do not refrain to express an opinion on the reasoning of the majority simply from choice, but from what I deem to be the profound duty of a member of this court.