THE STATE, EX REL. HUNTER, APPELLANT, *v.* ERICKSON, MAYOR, ET AL., APPELLEES.

(No. 39586—Decided April 27, 1966.)

*Mr. Norman Purnell* and *Mr. Bernard R. Roetzel,* for appellant.

*Mr. R. C. Sheppard* and *Mr. Paul M. McKosky,* for appellees.

*Per Curiam.* Four members of the court are of the opinion that the judgment of the Court of Appeals should be reversed, and the cause remanded with instructions to overrule the demurrer and for further proceedings according to law.

*Judgment reversed.*

TAFT, C. J., ZIMMERMAN, O'NEILL and HERBERT, JJ., concur. MATTHIAS, SCHNEIDER and BROWN, JJ., dissent.

HERBERT, J., concurring. On July 14, 1964, the Council of the city of Akron passed ordinance No. 873-1964 which prohibits discrimination in the sale or rental of houses by reason of race, color, religion, national origin, or ancestry.

Section 2 of the ordinance provides that:

"To effectuate said policy there is hereby created in the office of the Mayor a Commission on Equal Opportunity in Housing, which shall consist of five members who shall be appointed by the Mayor * * *."

The Council of the city of Akron later adopted ordinance 926-1964 amending section 6 of the original ordinance, as follows:

"Section 1. That section 6 of ordinance 873-1964, passed July 14, 1964, be and the same is hereby amended to provide as follows:

"Section 6 Enforcement Procedure

"(a) A complaint charging a violation of this ordinance may be made by the commission itself or by an aggrieved individual.

"(b) The commission shall make a prompt and full investigation of each complaint of an unlawful housing practice.

"(c) If the commission determines after investigation that a probable cause exists for the allegations made in the complaint, it shall attempt to eliminate the alleged unlawful housing practice by means of conciliation and persuasion. * * *"

Section (d) provides for a public hearing in the event of a failure to eliminate "the alleged unlawful housing practice charged in the complaint by means of conciliation or persuasion * * *." The power of subpoena is conferred upon the commission, and at such public hearing it may be proposed that a full and complete investigation be made. The ordinance then proceeds:

"(e) If upon all the evidence presented, the commission finds that the respondent has not engaged in any unlawful housing practice, it shall state its findings of fact, dismiss the complaint. If upon all the evidence presented the commission finds that the respondent has engaged or is engaging in an unlawful housing practice, it shall state its findings of fact and shall issue such order as the facts warrant.

"(f) In the event the respondent fails to comply with any order issued by the commission, it shall certify the case and the entire record of its proceedings to the city Director of Law for appropriate action to secure enforcement of the commission's order."

On the 26th and 27th of January 1965, relator caused the Mayor and members of the commission to be served with copies of an affidavit alleging among other averments "that in her efforts to locate desirable housing, relator was discriminated against because of her race, color, and ancestry, which discrimination" was in violation of the provisions of the amended ordinance.

Relator made written request to respondents to perform their duties pursuant to the provisions of the amended ordinance, but on January 30, 1965, the commissioners refused to "process" relator's complaint. On February 1, 1965, relator made demand upon the respondent city Director of Law to bring an action in mandamus to compel the commissioners and the Mayor to enforce the provisions of the amended ordinance. The respondent city Director of Law refused to bring the requested action, whereupon relator commenced an action in mandamus in the Court of Appeals of the Ninth Appellate District, seeking the issuance of a writ to compel respondents to perform the duties of their offices in the enforcement of the provisions of such amended ordinance.

The respondents demurred to relator's amended petition, contending that the amended ordinance was contrary to the Constitution of the state of Ohio.

The Court of Appeals sustained the demurrer, relying solely upon the case of *Porter* v. *City of Oberlin*, 1 Ohio St. 2d 143.

The cause is now before this court upon appeal by relator as a matter of right.

The record in this cause raises the query whether the respondents have sufficient standing in a court of law to question the constitutionality of the ordinance.

The rule now quite firmly established in Ohio answers the question in the negative.

*State, ex rel. State Bridge Commission,* v. *Griffith, Secy. of State* (1940), 136 Ohio St. 334, is well in point.

There, the relator, the State Bridge Commission, brought an action in mandamus originally in this court, seeking the issuance of a writ to compel the Secretary of State to attest a temporary bridge bond pursuant to a statute requiring such bond to be signed by the Governor and the chairman of the commission and to be under the state seal and attested by the Secretary of State. The respondent, Secretary of State, demurred to the petition, claiming that the statute under which the action was brought was unconstitutional. *This court, in a per curiam opinion, held that the respondent, Secretary of State, did not have the right to interpose such a defense as he would not be personally liable since the statute merely required him to per-*

*form a ministerial duty.* However, by reason of the importance of the issue to the state of Ohio and its urgency and there being no other adequate legal remedy available to the relator, this court did consider the question relative to the constitutionality of the statute, held the statute to be a valid legislative enactment and ordered the writ to issue.

At page 336 in the *per curiam* opinion, the court addresses the following question to itself:

"The first question concerns the right of the Secretary of State to raise the question of constitutionality of these statutes (Sections 1084-1 to 1084-17, General Code). Does he have such an interest in the execution of these bonds that he may contest their validity?

"Section 1084-10, General Code, requires the bonds to be signed by the Governor and the chairman of the commission, under the Great Seal of the state of Ohio, and attested by the Secretary of State. The word 'attested' means, in its general sense, 'witnessed' or 'certified.' Used as it is in this section, it does not imply that his signature is in any way an act on behalf of the state, for which he may be liable. Rather, it is a certification of the signatures of the other two signers and is clearly a ministerial action; and he clearly has no interest in this controversy. See 25 Ohio Jurisprudence 986, Section 14. However, where a question of general public interest *is raised,* some courts have taken the view that an officer may make *such a defense* in a mandamus suit, even where there is some doubt that the respondent has any rights in the matter." (Emphasis added.)

To the same effect is the holding in *State, ex rel. Lynch,* v. *Rhodes et al., Ohio Sinking Fund Commrs.,* 176 Ohio St. 251, where, in a *per curiam* opinion, the court, at page 253, speaks as follows:

"In determining who may question the constitutionality of a statute or ordinance, the pertinent general rules are summarized in 10 Ohio Jurisprudence 2d 217, Constitutional Law, Section 138, as follows:

" 'It is a well settled rule that in order to question the constitutionality of a statute or ordinance the one assailing the law must have a direct personal [pecuniary] interest in the litigation. That is, he must be affected adversely by any deci-

sion of the court sustaining the act. He must be able to show that he has sustained, or is in immediate danger of sustaining, some direct injury as a result of the enforcement of the legislation. It is not enough that the party assailing the act suffers in some indefinite way in common with people generally.' More specifically, an individual who is in no way a party to a contract and who cannot show that the contract was made for his benefit may not contest the validity of a statutory enactment on the ground that it impairs the obligation of such contract. *Vought* v. *Columbus, Hocking Valley & Athens R. R. Co.* (1898), 58 Ohio St. 123, affirmed, 176 U. S. 481, 44 L. Ed. 554, 20 S. Ct. 398; *City of Cincinnati* v. *Dexter* (1896), 55 Ohio St. 93.''

The respondents in the case at bar do not assert any general public interest in, or any probable injury to, or any other factor that may cause harm to the city of Akron as a result of the enforcement of the amended ordinance.

Ohio is in agreement with the great weight of authority which holds that a public official does not have sufficient standing in a court of law to attack the constitutionality of legislation except when and so far as it is about to be applied to his disadvantage; or in general such official must be able to show that he will be injured in person, property or right by the enforcement of such legislation. *State, ex rel. Clinton Falls Nursery Co.,* v. *County of Steele,* 181 Minn. 427, 232 N. W. 737; *State, ex rel. Atlantic Coast Line Rd. Co.,* v. *Board of Equalizers,* 84 Fla. 592, 94 So. 681; 16 Corpus Juris Secundum 226 and 251, Constitutional Law, Sections 76 and 82; 16 American Jurisprudence 2d 315, 316 and 325, Constitutional Law, Sections 121, 122 and 128.

It is well to note that the attack by the respondents, who are members of the executive branch of government, upon the enactment by the legislative branch, tends to weaken the tripartite (judicial, legislative and executive) internal structure of our form of government.

Such attacks also tend to encourage the evil of advisory judicial opinions.

The judgment of the Court of Appeals as its opinion points out, rests solely upon the case of *Porter* v. *City of Oberlin, supra.* Certain differences between *Porter* and the case at bar should

be noted. In *Porter*, the relator, a taxpayer, assailed the ordinance. Here, the relator, a taxpayer and also an alleged victim of discrimination, seeks enforcement of the ordinance. There, the respondents were public officers defending the ordinance which created their offices. Here, the respondents are attacking the ordinance which is the source of their power and duties. There, both parties had a definite public as well as private interest in their respective causes and consequently each had standing in a court of law to present the issues. Here, the respondents, it appears, would not be personally affected by the enforcement of the ordinance, hence, do not have any standing in a court to attack the constitutionality of the ordinance.

The judgment of the Court of Appeals should be reversed and the cause remanded to the Court of Appeals with instructions to overrule the demurrer and for further proceedings.

TAFT, C. J., ZIMMERMAN and O'NEILL, JJ., concurring in the judgment only.

When *Porter* v. *City of Oberlin* (1965), 1 Ohio St. 2d 143, 205 N. E. 2d 363, was decided, three of the present members of this court [1 Ohio St. 2d at 156, 157] expressly agreed with Judge Guernsey's conclusion that section 3 of the ordinance there involved was invalid legislation. In our opinion, that conclusion would require the judgment which the Court of Appeals rendered in the instant case. Judge Brown did not participate in that decision.

The reasons advanced by Judge Herbert for reversal of the judgment of the Court of Appeals in the instant case were not advanced by any party to these proceedings either in the Court of Appeals or in this court. Those reasons do not relate to the jurisdiction of the Court of Appeals to render the judgment which it rendered.

However, for the reasons stated on pages 153 and 154 in the opinion by Taft, C. J., in *Porter* v. *City of Oberlin, supra*, we believe that section 3 of the ordinance there involved was valid. For the same reasons, we believe that the provisions of the Akron ordinance relied upon by appellant in the instant case are valid. Hence, we concur in a judgment providing for overruling respondents' demurrer to the petition.

Brown, J., dissenting. The judgment of the Court of Appeals sustaining the demurrer to the petition was required by the holding of this court in *Porter* v. *City of Oberlin*, 1 Ohio St. 2d 143, and should be affirmed.

Matthias and Schneider, JJ., concur in the foregoing dissenting opinion.