CLERMONT ENVIRONMENTAL RECLAMATION CO. ET AL., APPELLEES, *v.* WIEDERHOLD ET AL., APPELLANTS.

[Cite as Clermont Environmental Reclamation Co. *v.* Wiederhold (1982), 2 Ohio St. 3d 44.]

(No. 82-280—Decided December 15, 1982.)

45

*Bauer, Morelli & Heyd Co., L.P.A.,* and *Mr. Arnold Morelli,* for appellees.

*Mr. George E. Pattison,* prosecuting attorney, and *Mr. Robert A. Jones,* for appellants.

*Mr. James A. Rudgers,* law director, *Messrs. Szolosi & Fitch, Mr. Michael R. Szolosi* and *Mr. Stephen C. Fitch,* urging reversal for *amicus curiae* city of Norton.

*Mr. William J. Brown,* attorney general, and *Mr. Terrence M. Fay,* urging affirmance for *amicus curiae* state of Ohio.

*Messrs. Porter, Wright, Morris & Arthur, Mr. J. Jeffrey McNealey* and *Mr. Dale V. Bring,* urging affirmance for *amicus curiae* Ohio Chamber of Commerce.

HOLMES, J. In response to a rapidly growing public health problem in Ohio, the General Assembly, in 1980, enacted a comprehensive measure, by way of Am. S.B. No. 269, to more effectively control the disposal of hazardous wastes, such wastes generally being the chemical by-products of the industrial and manufacturing process. With the aim and purpose of reasonably assuring that the facilities in the state where hazardous wastes would be disposed of would be designed, sited, and operated in such a manner so as to protect the public interest, the General Assembly amended R.C. Chapter 3734.

By virtue of the enactment of R.C. 3734.05(D)(3), there was created a Hazardous Waste Facility Approval Board composed of the Director of Environmental Protection who serves as chairman, the Director of Natural Resources, the chairman of the Ohio Water Development Authority, one chemical engineer and one geologist. The board's main function is to review, and either approve or disapprove, applications for hazardous waste facility installations and operation permits.

To reasonably assure that the newly formed board would site the hazardous waste facilities in the most feasible fashion based upon an input of wide consideration and criteria, the General Assembly, by way of R.C. 3734.05(C)(4)(c) and (d), provided that adjudicatory hearings must be conducted upon such applications for permits with the county commissioners and the chief executive officer of the municipal corporation in which the facility is proposed to be located, and any petitioning aggrieved or adversely affected persons being made parties to such proceeding.

The new law, within R.C. 3734.05(C)(6), provides that the board shall not approve an application for a hazardous waste facility installation and operation permit unless it finds and determines:

"(a) The nature and volume of the waste to be treated, stored, or disposed of at the facility;

"(b) That the facility complies with the director's hazardous waste standards adopted pursuant to section 3734.12 of the Revised Code;

"(c) That the facility represents the minimum adverse environmental impact, considering the state of available technology and the nature and economics of various alternatives, and other pertinent considerations;

"(d) That the facility represents the minimum risk of:

"(i) Contamination of ground and surface waters by leachate and runoff from the facility;

"(ii) Fires or explosions from improper treatment, storage, or disposal methods; or

"(iii) Accident during transportation of hazardous waste to the facility * * *."

In furtherance of carrying out the comprehensive purposes of this new legislation concerned with the growing statewide problem of the proper disposal of hazardous waste materials, the General Assembly enacted R.C. 3734.05(D)(3) which provides:

"No political subdivision of this state shall require any additional zoning or other approval, consent, permit, certificate, or other condition for the construction or operation of a hazardous waste facility authorized by a hazardous waste facility installation and operation permit issued pursuant to this chapter, nor shall any political subdivision adopt or enforce any law, ordinance, or regulation that in any way alters, impairs, or limits the authority granted in the permit issued by the board."

The sole question presented by this appeal is whether this quoted section is constitutional. Appellant township, in the main, argues that R.C.

3734.05(D)(3) is unconstitutional in that it was enacted as a general law, but that it will not have uniform operation throughout the state and, accordingly, it contravenes Section 26, Article II of the Ohio Constitution which provides in pertinent part that "[a]ll laws, of a general nature, shall have a uniform operation throughout the state * * *." Construing such constitutional provision, this court, in *Miller* v. *Korns* (1923), 107 Ohio St. 287, 301, stated that a general law which does not have uniform operation throughout the state "is clearly unconstitutional, unless it makes classifications which are reasonable."

The appellant township seeks the declaration by this court that R.C. 3734.05(D)(3) is unconstitutional, not upon the basis that it questions the power of the General Assembly to limit the zoning powers that body has conferred upon townships pursuant to R.C. Chapter 519, such as has been done in regard to agricultural use and public utility use, but, rather, upon the basis that this section of law would attempt to limit the home rule powers of municipalities in violation of Section 3, Article XVIII of the Ohio Constitution.

The appellant township argues that because the General Assembly is powerless to limit the home rule powers conferred upon municipalities by Section 3, Article XVIII of the Ohio Constitution in the manner provided by R.C. 3734.05(D)(3), such statute could not affect the zoning powers of municipalities in the same manner that it would affect townships, so, therefore, this statutory provision would not have uniform operation throughout the state as required by Section 26, Article II of the Ohio Constitution.

The broader issue of whether R.C. 3734.05(D)(3) conflicts with the zoning powers of municipalities as granted by Section 3, Article XVIII of the Ohio Constitution was addressed by the court of appeals below, and has been submitted to this court for its consideration by way of the arguments contained in the brief of *amicus curiae* city of Norton.

The court of appeals held that the enactment of R.C. 3734.05(D)(3) embodied a proper subject for statewide regulation within the scope of the state's police power, and that as such it was a "general law"; and that "[t]he police powers conferred upon municipalities by Section 3, Article XVIII, Ohio Constitution, is limited by the last phrase of that Section to such 'regulations as are not in conflict with general laws,' " the court relying upon *West Jefferson* v. *Robinson* (1965), 1 Ohio St. 2d 113 [30 O.O.2d 474], and *Canton* v. *Whitman* (1975), 44 Ohio St. 2d 62 [73 O.O.2d 285].

Varying the basis upon which the claim of unconstitutionality of the statute is presented, the *amicus curiae* city of Norton states that R.C. 3734.05(D)(3) is not a "general law" of the state within the meaning of Section 3, Article XVIII of the Ohio Constitution, and therefore cannot take precedence over laws enacted by municipalities under their constitutionally granted home rule powers.

In the normal stance of a cause where a party claims the unconstitu-

48

tionality of a statute, that party must show that he has standing to assert such claim of unconstitutionality. *Anderson* v. *Brown* (1968), 13 Ohio St. 2d 53 [42 O.O.2d 100]; *State, ex rel. Hunter,* v. *Erickson* (1966), 6 Ohio St. 2d 130 [35 O.O.2d 151]; *State, ex rel. Lynch,* v. *Rhodes* (1964), 176 Ohio St. 251 [27 O.O.2d 155]; *Vought* v. *Columbus, Hocking Valley & Athens R.R. Co.* (1898), 58 Ohio St. 123.

Here, were the appellant township maintaining that R.C. 3734.05(D)(3) was unconstitutional only on the basis that it was in conflict with home rule powers granted municipalities pursuant to Section 3, Article XVIII of the Ohio Constitution, we would be obliged to decline to rule upon the issue in that the township would not satisfy the standing requirement.

However, in this cause, the appellant raises the constitutionality of this section by virtue of stating that it purports to be a general law and, as such, must have uniformity in its application which, argues the appellant, it does not. We specifically answer this argument which claims the unconstitutionality of this statute as it would relate to the appellant township and, by so doing, it reasonably appears that we must answer the argument as raised by the *amicus curiae* city of Norton that the subject section of law is not a "general law."

At the outset, we start with the premise that the court of appeals was correct in concluding that R.C. 3734.05(D)(3) is a "general law" enacted by the General Assembly in furtherance of the general police power of the state. The issue of whether there will be safe and properly operated hazardous waste disposal facilities within this state to receive the potentially dangerous wastes from Ohio industry and, by so doing, prevent such wastes from fouling our water and countryside, is indeed a matter of statewide concern.

In defining "general laws," it was set forth in paragraph three of the syllabus in *West Jefferson* v. *Robinson, supra:*

"The words 'general laws' as set forth in Section 3 of Article XVIII of the Ohio Constitution mean statutes setting forth police, sanitary or similar regulations and not statutes which purport only to grant or to limit the legislative powers of a municipal corporation to adopt or enforce police, sanitary or other similar regulations."

The meaning of this syllabus principle of law is that a statute which prohibits the exercise by a municipality of its home rule powers without such statute serving an overriding statewide interest would directly contravene the constitutional grant of municipal power.

The section of law questioned herein should not be read and interpreted in isolation from the other sections of R.C. Chapter 3734 dealing with the state's control of the disposal of hazardous wastes. All such sections read *in pari materia* do not merely prohibit political subdivisions of the state from regulation of these facilities. Conversely, the statutory scheme contained in this chapter is a comprehensive one enacted to insure that such facilities are designed, sited, and operated in the manner which best serves the statewide public interest.

It is clear, under the prior interpretations of this court, that the exercise by the state of its police powers where contained in "general laws" takes precedence over ordinances enacted pursuant to home rule granted to municipalities pursuant to Section 3, Article XVIII of the Ohio Constitution. Accordingly, it was stated in paragraph two of the syllabus in *Canton* v. *Whitman, supra:*

"Police and similar regulations adopted under the powers of local self-government established by the Constitution of Ohio must yield to general laws of statewide scope and application, and statutory enactments representing the general exercise of police power by the state prevail over police and similar regulations of a municipality adopted in the exercise of its powers of local self-government. (*State, ex rel. Klapp,* v. *Dayton P. & L. Co.,* 10 Ohio St. 2d 14, [39 O.O.2d 9], paragraph one of the syllabus approved and followed.)"

In a recent discussion of the home rule authority of municipalities under Section 3, Article XVIII of the Ohio Constitution, this court, in *State, ex rel. Evans,* v. *Moore* (1982), 69 Ohio St. 2d 88 [23 O.O.3d 145], quoted from *Cleveland Elec. Illum. Co.* v. *Painesville* (1968), 15 Ohio St. 2d 125, 129 [44 O.O.2d 121], as follows:

"Thus, even if there is a matter of local concern involved, if the regulation of the subject matter affects the general public of the state as a whole more than it does the local inhabitants the matter passes from what was a matter for local government to a matter of general state interest."

Here, the statutory scheme enacted by the General Assembly, including the preemption provision at issue here, to govern the siting and operation of hazardous waste disposal facilities is reasonably calculated to achieve the General Assembly's goals. It follows, and we conclude, that R.C. 3734.05(D)(3) is a valid general law which supersedes any conflicting municipal ordinance.

As to the claim of the appellant township that R.C. 3734.05(D)(3) violates Section 26, Article II of the Ohio Constitution in that the statute, a law of a general nature, does not operate uniformly throughout the state, we must conclude that the wording, as well as the meaning and intent of the statute, is to the contrary.

It has been specifically recognized by this court that the General Assembly may limit the application of a statute to a given class of people or objects, even if the result of the classification is that the statute does not operate in all geographic areas within the state, so long as the classification is a reasonable one and the statute operates equally upon every person and locality within such classification. *Beachwood* v. *Bd. of Elections* (1958), 167 Ohio St. 369 [5 O.O.2d 6]; *Porter* v. *Hopkins* (1914), 91 Ohio St. 74; *State, ex rel. Yaple,* v. *Creamer* (1912), 85 Ohio St. 349; *Miller* v. *Korns, supra.*

However, in enacting R.C. 3734.05(D)(3), the General Assembly evidenced the intent that such measure would operate uniformly throughout the state. This section specifically states that *no political subdivision* may impose additional requirements upon a hazardous waste facility. The General

Assembly has created no classifications in this section; rather, it has passed a statute which by its language applies uniformly throughout the state.

In support of its argument, the appellant township places heavy reliance upon *Garcia* v. *Siffrin* (1980), 63 Ohio St. 2d 259 [17 O.O.3d 167]. However, that reliance is misplaced. In *Garcia,* this court held that R.C. 5123.18(D), (E) and (G) violated Section 26, Article II of the Ohio Constitution in that such statute did not have uniform application throughout the state because it distinguished between municipalities in an arbitrary and capricious manner, *i.e.,* whether by a certain date the municipality had an ordinance which regulated group homes. In contrast, the statute being considered here creates no classes and by its own specific language exempts no political subdivision. In contradistinction to the statute being considered in *Garcia,* the section of law here was enacted with one of its legislative goals and policy being appropriate statewide land use planning. The fact that some areas of the state may not ultimately be approved by the board for the situs of such facilities because of the ecological, geological and other factors being considered, makes the operation of the law none the less uniform. Such a determination as to the reasonableness of the facility sitings may be appropriately delegated to an administrative body as was statutorily designated within this chapter of law.

Based upon all of the foregoing, we hold that R.C. 3734.05(D)(3) is a "law, of a general nature," or a "general law," and as such has a uniform operation throughout the state, and is not violative of Section 26, Article II of the Ohio Constitution.

Further, we hold that such section of law being a general law enacted within a reasonable exercise of the police power of the state takes precedence over laws in conflict therewith enacted by municipalities pursuant to home rule power granted by Section 3, Article XVIII of the Ohio Constitution. Accordingly, the judgment of the court of appeals is hereby affirmed.

*Judgment affirmed.*

CELEBREZZE, C.J., SWEENEY, C. BROWN and KRUPANSKY, JJ., concur.

W. BROWN and LOCHER, JJ., concur in judgment only.

CLIFFORD F. BROWN, J., concurring. The majority opinion attempts to distinguish *Garcia* v. *Siffrin* (1980), 63 Ohio St. 2d 259 [17 O.O.3d 167], from the present case on the grounds that the statute struck down in *Garcia* "did not have uniform application throughout the state" and "was [not] enacted with one of its legislative goals and policy being appropriate statewide land use planning." Because I believe *Garcia* should be expressly overruled, I concur separately.

In order to support its conclusion that the statute in *Garcia* was not a general law, the court ignored the basic purpose of the statute at issue and

selectively excised certain subsections.[1] This approach has been completely discredited by the majority's opinion today.[2]

Moreover, the broad language contained in *Garcia* suggests that a city may unilaterally exempt itself, pursuant to its home rule powers, from compliance with any state statute even when the General Assembly has exhibited an obvious concern for statewide uniformity. Such language is dangerously misleading.[3] Indeed, the fact that we were called upon to decide the present case upon this premise is proof of the uncertainty with which *Garcia* is viewed by members of the bench and bar. In my view, it is this court's responsibility to explicitly repudiate *Garcia* in order to avoid further confusion.[4]

With this exception, I concur in the thorough analysis of the law contained in the majority opinion.

---

[1] "*\* \* \* In the main, the provisions of R.C. Chapter 5123 fall within the definition of a 'general law'* providing a method by which the mentally retarded may hopefully be acclimated to a useful place in society through the licensure of 'residential facilities' and the deinstitutionalizing of these mentally retarded individuals. *However, sub-sections (D), (E) and (G) of R.C. 5123.18 are not reasonably related to the valid purposes and objectives of the regulatory and licensing portions of the other sections of this chapter of law.* In this attempt to be supportive of the purposes of this chapter, *these sections unreasonably and unlawfully limit the enforcement by municipalities of certain of the police powers authorized by the Ohio Constitution to such municipalities.*" *Garcia,* at page 271. (Emphasis added.)

[2] The majority's discussion of what constitutes a general law within the meaning of Section 26, Article II of the Ohio Constitution and Section 3, Article XVIII of the Ohio Constitution contains the following language:

"*The section of law questioned herein should not be read and interpreted in isolation from the other sections of R.C. Chapter 3734* dealing with the state's control of the disposal of hazardous wastes. All such sections read *in pari materia* do not merely prohibit political subdivisions of the state from regulation of these facilities. Conversely, the statutory scheme contained in this chapter is a comprehensive one enacted to insure that such facilities are designed, sited, and operated in the manner which best serves the statewide public interest." (Emphasis added.)

[3] As was pointed out by Justice Paul W. Brown in his dissent to *Garcia* at page 279:

"*\* \* \** Further interference by a municipality may be safeguarded against, under a specific legislative grant permitting a particular use at a specific location governed by a state agency. *To hold otherwise, as the majority has done, is to in effect handcuff the General Assembly so that it may not create areas of statewide licensing which are exempt from local municipal control.*" (Emphasis added.)

[4] Even the author of the *Garcia* opinion has questioned its continuing validity in his dissent to *Saunders* v. *Clark Cty. Zoning Dept.* (1981), 66 Ohio St. 2d 259, at 265 [20 O.O.3d 244]:

"*\* \* \** [T]he flexibility effected by this decision, which, *in effect, overrules syllabus law as pronounced by this court only nine months ago,* in *Garcia* v. *Siffrin* (1980), 63 Ohio St. 2d 259 [17 O.O.3d 167], transforms the law of *stare decisis* into that which assumes a stability not unlike a revolving door." (Emphasis added.)