JOE HORISK'S SALVAGE POOL SYSTEMS OF OHIO, Appellant,

v.

CITY OF STRONGSVILLE, Appellee.

[Cite as *Joe Horisk's Salvage Pool Sys. of Ohio
v. Strongsville* (1993), 91 Ohio App.3d 121.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 63578.

Decided Oct. 12, 1993.

*Edward Kancler,* for appellant.

*John D. Ryan,* for appellee.

NUGENT, Judge.

This is an appeal from the decision of the Cuyahoga County Court of Common Pleas which granted the motion for summary judgment filed by defendant-appellee, the city of Strongsville, Ohio (hereinafter "the city"), against plaintiff-appellant, Joe Horisk's Salvage Pool Systems of Ohio (hereinafter "appellant"), on appellant's complaint for declaratory judgment.

Count one [1] of appellant's complaint sought a declaration from the court ruling, in effect, that R.C. Chapter 4738, regulating operations of salvage motor vehicle

---

1. Counts two and three were voluntarily dismissed without prejudice.

pools and salvage motor vehicle auctions, preempts the city's local zoning regulations, in particular Section 1262.03(a), notwithstanding any prior administrative or court decisions to the contrary. Appellee, the city of Strongsville, duly answered, asserting as an affirmative defense the doctrine of *res judicata* and/or collateral estoppel.

Following a pretrial held on November 11, 1991, both parties were granted leave to file motions for summary judgment. On January 21, 1992, appellant filed its motion for summary judgment on count one of its complaint. Appellee filed a brief in opposition as well as a motion for summary judgment of its own on March 6, 1992. Evidentiary materials attached in support of and in opposition to each party's motion for summary judgment reveal the following.

Appellant is the owner of two parcels of land, together consisting of approximately twenty-two acres, located in a general industrial zoning district in the city of Strongsville at the southeast corner of Route 82 and Marks Road. The first parcel, fronting on Route 82, consists of approximately seventeen acres and has been operated as a salvage motor vehicle pool operation and a salvage motor vehicle auction since 1972. The current operation has been in existence for some time prior to the adoption of the city's zoning code now in question. The second parcel, fronting on Marks Road (hereinafter referred to as the "Marks Road property"), consists of 4.387 acres, which remain vacant due to the existing zoning code, which prohibits the use of open land for general services, sales and storage establishments.

Appellant acquired both parcels of the property in question by way of warranty deed from James F. Ficociello in 1988. Ficociello had operated the Route 82 property as a motor vehicle salvage pool since 1972. The remaining smaller parcel, the Marks Road property, however, was vacant. The Marks Road property was purchased in 1978 by Ficociello.

Ficociello planned on devoting the smaller Marks Road property as part of his motor vehicle salvage pool and began construction of site improvements. After Ficociello was served with notice by the city to cease and desist, the city commenced an action for injunctive relief against Ficociello under case No. 012,491 in the Cuyahoga County Court of Common Pleas, praying for a temporary restraining order and a permanent injunction against Ficociello to bar the use of the Marks Road property in contravention of the city's zoning code.

Ficociello duly answered the city's complaint and filed a counterclaim seeking a declaratory judgment. The pertinent allegations of the counterclaim are as follows:

"4. Defendant says that he has conducted such operation continuously and without obligation since the time of its inception and that he has done so under a license issued by the State of Ohio.

"5. Defendant says that his operations in land use are well·within the perameters [*sic*] of the zoning ordinances of the City of Strongsville and that the City's denial of his use of the adjoining, abutting, contiguous property is unreasonable, arbitrary, capricious and has been so done in derogation of his Constitutional Rights.

"6. Defendant further asserts that such conduct with regard to his property and his intended use is confiscatory in nature and a denial of due process of law as guaranteed by the Constitution[s] of the State of Ohio and of the United States."

Ficociello's prayer for relief was as follows:

"WHEREAS, the Defendant prays that he be granted a Declaratory Judgment authorizing him to use the premises known as Permanent Parcel No. 393–1–11 for the same purposes that he is using the adjacent and abutting premises; [and] that the ordinances of the City of Strongsville in their application with respect to the property of the Defendant be declared unconstitutional * * *."

Prior to trial on the parties' claims and counterclaims, the parties stipulated that Ficociello was licensed to engage in the business of operating a salvage motor vehicle pool pursuant to R.C. Chapter 4738. On April 21, 1983, case No. 012,491 was fully tried on the issues raised by the city's complaint and the defendant's answer and counterclaim. On August 22, 1983, the trial court executed its journal entry and opinion finding in favor of the city on its complaint. The trial court issued the following order:

"IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED as follows:

"That the Court finds that the Strongsville zoning ordinance is constitutional; that the application of this ordinance to the Marks Road property is also not unconstitutional, confiscatory or a denial of defendant's constitutional rights, nor is it unreasonable, arbitrary, or capricious.

"That a declaratory judgment is issued permitting Permanent Parcel No. 393–1–11 for use as a salvage pool, provided all building and zoning ordinances are complied with, namely, that the business and operations of the pool be conducted within an enclosed building or buildings, and that the items which are the subject of the business of a salvage pool, namely, wrecked, scrapped, ruined, or dismantled motor vehicles or vehicles worn out or unfit for operation as a motor vehicle, be processed and stored only within enclosed buildings; that the exceptions as to

off-street parking are not applicable to such vehicles; [and] that drainage and setback, etc. requirements, etc., must be complied with.

"IT IS FURTHER ORDERED that the defendant be enjoined from constructing or using said parcel for a salvage pool or facility without an occupancy permit or building permit in accordance with this order and the ordinances of the City of Strongsville."

In the present case, appellant's motion for summary judgment argued that the earlier judgment did not operate as a bar to the present action under the doctrine of *res judicata* and/or collateral estoppel because the earlier action was decided prior to 1988 when the state adopted regulations governing the operation of salvage motor vehicle pools and salvage motor vehicle auctions. The regulations, as found in Ohio Adm.Code 4501:1–4–04, it was contended, preempted local zoning ordinances that were in conflict therewith. However, appellant abandoned this argument when it learned that Ohio Adm.Code 4501:1–4–04 was actually adopted in 1980. Based on the foregoing, the trial court granted the city's motion for summary judgment and denied appellant's motion for summary judgment. Appellant timely appeals, raising the following sole assignment of error for our review:

"The trial court committed prejudicial error in granting defendant/appellee's motion for summary judgment and denying plaintiff/appellant's motion for summary judgment because the decision as a matter of law fails to recognize and hold that the local zoning laws of the city of Strongsville as applied to plaintiff/appellant's property are preempted by the operation of Chapter 4738 of the Ohio Revised Code and valid regulations adopted thereunder."

■ Appellant contends the trial court erred in granting the city's motion for summary judgment. The city's primary contention in its motion for summary judgment is that appellant's complaint is barred by the doctrine of *res judicata* and/or collateral estoppel. We agree with the city.

■ The doctrine of *res judicata* "is that 'a final judgment or decree rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction is conclusive of rights, questions and facts in issue as to the parties and their privies, and is a complete bar to any subsequent action on the same claim or cause of action between the parties or those in privity with them.'" *Johnson's Island v. Danbury Twp. Bd. of Trustees* (1982), 69 Ohio St.2d 241, 243, 23 O.O.3d 243, 244–245, 431 N.E.2d 672, 674, quoting *Norwood v. McDonald* (1943), 142 Ohio St. 299, 27 O.O. 240, 52 N.E.2d 67, paragraph one of the syllabus. As the Ohio Supreme Court recently explained:

"It has long been the law of Ohio that 'an existing final judgment or decree between the parties to litigation is conclusive as to all claims which were *or might*

*have been* litigated in a first lawsuit.' (Emphasis added.) *Rogers v. Whitehall* (1986), 25 Ohio St.3d 67, 69, 25 OBR 89, 90, 494 N.E.2d 1387, 1388. '[W]here a party is called upon to make good his cause of action * * *, he must do so by all the proper means within his control, and if he fails in that respect * * *, he will not afterward be permitted to deny the correctness of the determination, nor to re-litigate the same matters between the same parties.' *Covington & Cincinnati Bridge Co. v. Sargent* (1875), 27 Ohio St. 233, paragraph one of the syllabus. The doctrine of *res judicata* 'encourages reliance on judicial decisions, bars vexatious litigation, and frees the court to resolve other disputes.' *Brown v. Felsen* (1979), 442 U.S. 127, 131 [99 S.Ct. 2205, 2209, 60 L.Ed.2d 767, 771]. 'Its enforcement is essential to the maintenance of social order; for, the aid of judicial tribunals would not be invoked for the vindication of rights of person and property, if * * * conclusiveness did not attend the judgments of such tribunals * * *.' *Southern Pacific Rd. Co. v. United States* (1897), 168 U.S. 1, 49 [18 S.Ct. 18, 27–28, 42 L.Ed. 355, 377]." *Natl. Amusements, Inc. v. Springdale* (1990), 53 Ohio St.3d 60, 62, 558 N.E.2d 1178, 1180.

In *Natl. Amusements,* the Ohio Supreme Court held that the doctrine of *res judicata* barred the plaintiffs from challenging a cinema tax on First Amendment grounds where the plaintiffs had been previously unsuccessful in challenging the same cinema tax on equal protection grounds, notwithstanding a change in decisional law which might arguably reverse the outcome in the prior civil action. In so holding, the court noted that "[t]he only difference between the two actions is the allegation, in the amended complaint filed in the instant case, that the cinema tax violates the First Amendment. This allegation is nothing more than an alternative ground for relief which could have been asserted in [the prior action]." *Id.* at 62, 558 N.E.2d at 1180. The court added that "[t]he doctrine of *res judicata* requires a plaintiff to present every ground for relief in the first action, or be forever barred from asserting it." *Id.*

The principle that claims or defenses which could have been raised in a prior action, although not raised in such action, are barred by the doctrine of *res judicata* was also expressed in *Johnson's Island, supra.* In *Johnson's Island,* the Ohio Supreme Court held that "[w]hen in a prior injunction action brought to enjoin the defendant landowner's violation of a zoning law, the defendant asserts the affirmative defense of non-conforming use, but does not assert the unconstitutionality of the law, the landowner is, on the principle of *res judicata,* barred from later bringing a declaratory judgment action alleging such law to be unconstitutional." *Id.* at paragraph one of the syllabus.

Similarly, in *Lakewood Congregation of Jehovah's Witnesses, Inc. v. Lakewood* (1984), 20 Ohio App.3d 338, 20 OBR 441, 486 N.E.2d 194, this court held that "[a] cause of action which has been litigated in federal court determining that a zoning

ordinance did not violate the United States Constitution may not thereafter be litigated in a state court, in a case involving the same parties and the same facts as those in the federal case, on the grounds that the zoning ordinance violated the Ohio Constitution, based on the doctrine of *res judicata.*" *Id.,* syllabus.

Based on the foregoing authority, we conclude that appellant's complaint is barred by the doctrine of *res judicata.* Initially, we emphasize that the doctrine of *res judicata* applies to parties and their privies. *Johnson's Island, supra.* " 'Privity' is a succession of interest or relationship in the same thing:" *Metal-working Mach. Co. v. Fabco, Inc.* (1984), 17 Ohio App.3d 91, 17 OBR 152, 477 N.E.2d 634, paragraph one of the syllabus. Moreover, the Ohio Supreme Court has recognized that "successive ownership interests in the same property are sufficient to sustain the flow of privity * * *." *Columbus v. Union Cemetery Assn.* (1976), 45 Ohio St.2d 47, 51, 74 O.O.2d 79, 81, 341 N.E.2d 298, 301–302. As successor in interest to the property in question, appellant is clearly in privity with Ficociello, the plaintiff in the preceding cause of action. Appellant's predecessor in interest to the Marks Road property commenced an action against the city of Strongsville in 1980, asserting that enforcement of the Strongsville Zoning Code was "unreasonable, arbitrary, capricious and * * * in derogation of his Constitutional Rights." The original complaint further asserted that the city's conduct was "confiscatory in nature and a denial of due process of law as guaranteed by the Constitution[s] of ¡* * * Ohio and of the United States." The trial court rejected this argument, holding that "the Strongsville zoning ordinance is constitutional; [and] that the application of this ordinance to the Marks Road property is also not unconstitutional, confiscatory or a denial of defendant's constitutional rights, nor is it unreasonable, arbitrary, or capricious." In the present case, appellant, as successor in interest to the original plaintiff's title, asserts that the application of the same zoning ordinance is preempted by R.C. Chapter 4738 as it applies to the property in question. Thus, we conclude that appellant's current allegation is nothing more than an alternative ground for relief which could have been asserted in the prior cause of action. As such, the doctrine of *res judicata* bars appellant from raising the issue in the present cause of action.

█ In order to avoid application of the doctrine of *res judicata,* appellant argues that the doctrine applies only to points of law actually and directly in issue in the former action. Appellant relies on 63 Ohio Jurisprudence 3d (1985), Judgments, Section 415, which cites *Columbus v. Union Cemetery Assn., supra,* in support of its proposition. However, as is frequently the case, the proposition cited in Ohio Jurisprudence is somewhat overstated. The Ohio Supreme Court in *Columbus v. Union Cemetery Assn.* held, at paragraph one of the syllabus, that:

"In the absence of fraud or collusion, a point of law or a fact which was actually and directly in issue in a former action, and was there passed upon and determined by a court of competent jurisdiction, may not be drawn in question in a subsequent action between the same parties or their privies. (*Norwood v. McDonald* [ (1943) ], 142 Ohio St. 299 [27 O.O. 240, 52 N.E.2d 67]; *Whitehead v. Genl. Tel. Co.* [ (1969) ], 20 Ohio St.2d 108 [49 O.O.2d 435, 254 N.E.2d 10], approved and followed.)"

The foregoing simply does not limit the application of the doctrine of *res judicata* to points of law actually and directly in issue in the former action. To the contrary, "[t]he doctrine of *res judicata* requires a plaintiff to present every ground for relief in the first action, or be forever barred from asserting it." *Natl. Amusements, supra,* 53 Ohio St.3d at 62, 558 N.E.2d at 1180.

Appellant further relies on Restatement of the Law 2d, Judgments (1982), Section 28, and 46 American Jurisprudence 2d (1969), Judgments, Section 46, for the proposition that the doctrine of *res judicata* does not bar questions of law not raised in the prior litigation. Although American Jurisprudence is not authority upon which reliance should be made, Restatement of the Law 2d, Judgments (1982), Section 28, provides in pertinent part:

"Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances:

" * * * *

"(2) *The issue is one of law and* (a) the two actions involve claims that are substantially unrelated, or (b) *a new determination is warranted in order to take account of an intervening change in the applicable legal context or otherwise to avoid inequitable administration of the laws;* or

" * * * *

"(5) There is a clear and convincing need for a new determination of the issue (a) because of the potential adverse impact of the determination on the public interest or the interests of persons not themselves parties in the initial action, (b) because it was not sufficiently foreseeable at the time of the initial action that the issue would arise in the context of a subsequent action, or (c) *because the party sought to be precluded, as a result of* the conduct of his adversary or *other special circumstances, did not have an adequate opportunity or incentive to obtain a full and fair adjudication in the initial action.*" (Emphasis supplied by appellant.)

The Ohio Supreme Court has, however, recognized that due to the important public and private interests served by the doctrine of *res judicata,* exceptions to

the doctrine should be narrowly construed. *Natl. Amusements, supra,* at syllabus. In *National Amusements,* the Supreme Court refused to recognize an exception for changes in decisional law which might arguably reverse the outcome of a prior civil action. In the present case, appellant acknowledges that the pertinent sections of the Ohio Administrative Code were in existence at the time of the prior civil litigation. Appellant can further point to no intervening changes in the applicable legal context or other special circumstances warranting an exception to the doctrine of *res judicata* other than to say that the current preemption issue was not raised. We have, however, already concluded that the preemption issue could have been raised in the prior litigation. Accordingly, we can find no reason to apply the exception contained in the Restatement to the facts *sub judice.*

▪ Assuming *arguendo* that the doctrine of *res judicata* does not bar the present cause of action, we conclude that R.C. Chapter 4738 does not preempt enforcement of the zoning code in question.

▪ The authority of the state of Ohio in exercising its police powers is governed by Section 26, Article II of the Ohio Constitution, which provides that "[a]ll laws, of a general nature, shall have a uniform operation throughout the state * * *." R.C. Chapter 4738 is a law of a general nature governing the operation of salvage motor vehicle pools and actions having uniform operation throughout the state. It is clear, under Ohio Supreme Court case law, that the exercise by the state of its police powers, where contained in general laws, takes precedence over ordinances enacted pursuant to the home rule granted to municipalities pursuant to Section 3, Article XVIII of the Ohio Constitution. *Clermont Environmental Reclamation Co. v. Wiederhold* (1982), 2 Ohio St.3d 44, 49, 2 OBR 587, 591–592, 442 N.E.2d 1278, 1282–1283. Section 3, Article XVIII of the Ohio Constitution (the Home Rule Amendment) provides:

"Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

▪ Thus, a municipal zoning ordinance is valid unless it conflicts with the dictates of a state statute. *Ridgley, Inc. v. Wadsworth Bd. of Zoning Appeals* (1986), 28 Ohio St.3d 357, 28 OBR 420, 503 N.E.2d 1036.

▪ Absent express statutory preemption, the general test for determining whether a general law of the state preempts a local regulation is whether there is a conflict between the two provisions. *Perry v. Providence Twp.* (1991), 63 Ohio App.3d 377, 380, 578 N.E.2d 886, 888. "In determining whether an ordinance is in 'conflict' with general laws, the test is whether the ordinance permits or licenses that which the statute forbids and prohibits, and vice versa." *Struthers*

*v. Sokol* (1923), 108 Ohio St. 263, 140 N.E. 519, paragraph two of the syllabus; see, also, *Fondessy Enterprises, Inc. v. Oregon* (1986), 23 Ohio St.3d 213, 23 OBR 372, 492 N.E.2d 797, paragraph two of the syllabus; and *Perry, supra.*

Because R.C. Chapter 4738 does not contain an express preemption provision, the issue before this court is whether Section 1262.03(a) forbids or prohibits that which R.C. 4738.11(A) and Ohio Adm.Code 4501:1–4–04 permit or license. It cannot be in dispute that state rules and regulations have the full force and effect of law and are, therefore, general laws of the state of Ohio. See *Doyle v. Ohio Bur. of Motor Vehicles* (1990), 51 Ohio St.3d 46, 554 N.E.2d 97. Therefore, we will consider whether the statute and duly authorized regulations conflict with the city zoning code.

R.C. 4738.11(A) provides:

"The motor vehicle salvage dealer's licensing board shall adopt rules prescribing the physical characteristics of facilities used by motor vehicle salvage dealers, salvage motor vehicle auctions, and salvage motor vehicle pools, which shall include requirements for fencing or otherwise screening the view of the facilities to at least the extent required for junkyards by sections 4737.07 and 4737.09 of the Revised Code. Such rules shall be consistent with the standards adopted by the director of transportation pursuant to the 'Highway Beautification Act of 1965.' 79 Stat. 1030, 23 U.S.C. 361, as amended. Enforcement of the screening regulations of this division shall be subject to approval, supervision, and action of the director of transportation. The director may enforce the screening regulations of this section if he considers that such regulations are not adequately enforced."

Pursuant to the above, the Motor Vehicle Salvage Dealer's Licensing Board has adopted Ohio Adm.Code 4501:1–4–04, which provides:

"4501:1–4–04 Place of business required for motor vehicle salvage dealers, salvage motor vehicle pools and salvage motor vehicle auctions

"(A) The characteristics of the facilities used by motor vehicle salvage dealers, salvage motor vehicle pools and salvage motor vehicle auctions, shall consist of the following:

"(1) A minimum area of fifty thousand square feet.

"(2) Such area to be shielded by a fence meeting the following requirements, except where relieved by zoning rules:

"(a) Having a minimum height of six feet with a maximum of ten feet in height.

"(b) Such fencing shall shield the premises from ordinary view.

"(c) Exceptions to this paragraph must be granted in writing, by the registrar of motor vehicles, provided, however, that no exception shall be granted in

contravention of the United States Highway Beautification Act of 1965, as amended.

"(3) A living hedge of equal height and sufficient density to prevent view of the premises may be substituted for the fence. A living hedge may exceed the ten-foot height limitation.

"(4) Reasonable consideration shall be given to the topography of the land by enforcement personnel when inspecting premises for such fence or enclosure, provided, however, that this provision shall not be construed to permit violation of the United States Highway Beautification Act of 1965, as amended, where applicable.

"(5) All inventory of the business will be stored behind the fence or enclosure to promote and preserve a positive visual impact of the salvage yard's business on the surrounding neighborhood. All activities of the salvage yard will be conducted in a manner that will sustain a good visual image.

"(6) All non-owned vehicles in storage for the general public shall be held in an area segregated and easily identifiable from the inventory of the licensee. The licensee shall maintain a separate record of all transactions concerning these vehicles.

"(B) The office in which such business will be transacted will be in a building of sufficient size to conduct said business with a minimum of two hundred twenty-five square feet. This area shall consist of the following:

"(1) An area devoted to sales transactions.

"(2) An office to maintain records required to operate business by the licensee.

"(C) The regular business hours shall be posted in plain view.

"(D) Records of the business shall be available for inspection during reasonable business hours by board investigators.

"(E) Each motor vehicle salvage dealer, salvage motor vehicle pool dealer or salvage motor vehicle auctioneer shall keep his license, or a certified copy thereof, posted in a conspicuous place in each business establishment."

In contrast, Section 1262.03 of the Strongsville Zoning Code provides in pertinent part:

"1262.03 USE REGULATIONS; COMMERCIAL SERVICE (CS) DISTRICT.

"Buildings and land shall be used, and buildings shall be designed, erected, altered, moved and maintained, in whole or in part, in a Commercial Service District, only for the uses set forth in the following schedules and regulations:

"(a) *Main Uses Permitted.*

" * * *

"(2) General services, sales and storage establishments if conducted wholly within enclosed buildings to the following extent: * * *."

Appellant contends that Ohio Adm.Code 4501:1–4–04 sets forth the maximum extent of regulation permitted of facilities used by salvage motor vehicle pools and salvage motor vehicle auctions. In support, appellant points to subsection (A)(2) wherein the fencing requirements may be relieved by local zoning codes. Appellant further argues that the case of *Clermont Environmental Reclamation Co. v. Wiederhold, supra,* 2 Ohio St.3d 44, 2 OBR 587, 442 N.E.2d 1278, is controlling to the present controversy. However, *Clermont Environmental* is distinguishable from the present case inasmuch as R.C. 3734.05(D)(3) expressly prohibits any political subdivision of the state from requiring any additional zoning or other approval for the construction and operation of a hazardous waste facility. Thus, R.C. Chapter 3734 expressly preempts local regulation in the field of hazardous waste disposal. No such express provision in R.C. Chapter 4738 exists herein.

Appellant also contends that because R.C. Chapter 4737, regulating junkyards, does contain a provision which expressly permits municipal corporations to regulate and even prohibit junkyards, see R.C. 4737.07, the absence of such provision in R.C. Chapter 4738 acknowledges a statewide policy preempting the field of regulation of salvage motor vehicle pools and salvage motor vehicle auctions. By refusing to preempt the field, R.C. Chapter 4737, therefore, expresses an intent by the legislature to authorize the regulation of junkyards by municipal corporations. In the present case, it is not in dispute, and appellant acknowledges, that it is not a junkyard. Moreover, there is no express legislative intent in R.C. Chapter 4738 to permit greater regulation. Thus, we are left with a situation in which the legislature has neither expressly preempted the field of salvage motor vehicle pools nor expressly permitted greater regulation by municipal corporations. Further, as previously stated, absent express statutory preemption, the test is whether there is a conflict between the general laws and the local regulations. Accordingly, this court will not find preemption merely because the legislature has chosen to authorize greater regulation of junkyards but has remained silent as to salvage motor vehicle pools and auctions.

In determining whether there exists a conflict, we note that R.C. 4738.11(A) expressly states that the requirements for fencing and screening the view of salvage motor vehicle pools be extended at least to such fencing and screening requirements for junkyards as provided by R.C. 4737.07 and 4737.09. Thus, R.C. 4738.11(A) represents the minimum fencing and screening requirements and provides that those requirements be the same as those which are required for junkyards. In contrast, Section 1263.03(a)(2) of the Strongsville Zoning Code

does not contain fencing and screening requirements, but rather requires that the establishment of a salvage motor vehicle pool and auction be "conducted wholly within enclosed buildings * * *."

In comparing Ohio Adm.Code 4501:1–4–04 to Section 1262.03(a) of the zoning code, this court concludes that the zoning code does not forbid or prohibit that which the Ohio Administrative Code permits or licenses. Nothing in the zoning code prohibits the establishment of salvage motor vehicle pools or salvage motor vehicle auctions. Rather, while the Revised Code licenses and regulates the operation of salvage motor vehicle pools and auctions, the zoning code merely places an additional condition on the use of land which is directly related to the public's health, safety and morals. The statutes taken together present dual conditions to the operation of a salvage motor vehicle pool and salvage motor vehicle auction. Cf. *Set Products, Inc. v. Bainbridge Twp. Bd. of Zoning Appeals* (1987), 31 Ohio St.3d 260, 31 OBR 463, 510 N.E.2d 373; *Hulligan v. Bd. of Zoning Appeals* (1978), 59 Ohio App.2d 105, 13 O.O.3d 162, 392 N.E.2d 1272. Thus, there is no conflict between the Revised Code and the zoning code.

Accordingly, appellant's sole assignment of error is overruled.

*Judgment affirmed.*

PATTON, P.J., and ANN McMANAMON, J., concur.

ANN McMANAMON, J., retired, of the Eighth Appellate District, sitting by assignment.