[Cite as *McCrone v. Bank One Corp.*, 107 Ohio St.3d 272, 2005-Ohio-6505.]

**MCCRONE, APPELLEE, *v.* BANK ONE CORPORATION;**

**KIELMEYER, ADMR., APPELLANT.**

**[Cite as *McCrone v. Bank One Corp.,* 107 Ohio St.3d 272, 2005-Ohio-6505.]**

*Workers' compensation — R.C. 4123.01(C)(1) — Definition of "injury" — Statutory exclusion of mental injuries from compensability under the Workers' Compensation Act does not violate equal protection.*

(Nos. 2004-1063 and 2004-1065 — Submitted April 27, 2005 — Decided December 28, 2005.)

APPEAL from and CERTIFIED by the Court of Appeals for Stark County, No. 2003CA00092, 2004-Ohio-2538.

_____

**SYLLABUS OF THE COURT**

1. Psychological or psychiatric conditions that do not arise from a compensable physical injury or occupational disease are excluded from the definition of "injury" under R.C. 4123.01(C)(1) and from workers' compensation coverage.

2. R.C. 4123.01(C)(1) does not violate the Equal Protection Clauses of the United States and Ohio Constitutions by excluding from the definition of "injury" psychological or psychiatric conditions that do not arise from a compensable physical injury or occupational disease.

_____

**LANZINGER, J.**

**{¶ 1}** The question presented is whether R.C. 4123.01(C)(1) violates equal protection by excluding psychological or psychiatric injuries from workers' compensation coverage. We hold that it does not.

Facts and Procedure

**{¶ 2}** Appellee, Kimberly McCrone, was an employee of Bank One Corporation from 1998 to 2001. During her employment, the branch in which she worked was robbed twice. At the first robbery on December 20, 2000, McCrone was present but was not the teller involved; however, she was the teller robbed on August 4, 2001. Although McCrone returned to work without claiming adverse effects after the first robbery, after the second she was diagnosed with posttraumatic stress disorder and has not worked for the bank since. She filed for workers' compensation benefits for her psychological condition stemming from the second robbery, but benefits were denied because she had not suffered a physical injury.[1] McCrone exhausted her administrative appeals and then filed suit in the Court of Common Pleas of Stark County. She challenged R.C. 4123.01(C)(1), the statute that excludes psychological or psychiatric conditions from the definition of "injury" for workers' compensation purposes, on constitutional grounds, alleging that it violated the Equal Protection and Due Process Clauses of the United States and Ohio Constitutions, as well as Section 35, Article II of the Ohio Constitution.[2]

**{¶ 3}** The bank filed a motion for summary judgment, which was denied, and R.C. 4123.01(C)(1) was ruled unconstitutional as applied to McCrone. The trial court found that the exclusion of psychological injuries from workers' compensation coverage was not rationally related to a legitimate governmental interest and thus found an equal protection violation. The Court of Appeals for Stark County affirmed. *McCrone v. Bank One Corp.*, 2nd Dist. No. 2003CA00092, 2004-Ohio-2538, 2004 WL 1111021.

---

1. Fortunately, it does not appear that anyone was harmed on that occasion.

2. As the arguments concerning due process and the violation of Section 35, Article II were not raised in a proposition of law or in the certified conflict, we limit the constitutional analysis to the equal protection claim.

**{¶ 4}** These cases come before us upon acceptance of a discretionary appeal of the Ohio Bureau of Workers' Compensation ("BWC"), as well as upon the certification of a conflict from the Court of Appeals for Stark County. We found that a conflict exists. 103 Ohio St.3d 1459, 2004-Ohio-5056, 815 N.E.2d 676.

**{¶ 5}** The certified question asks "[w]hether R.C. 4123.01(C)(1) violates the Equal Protection Clauses of the United States and Ohio Constitutions, where it excludes from Workers' Compensation coverage psychological or psychiatric conditions occurring in the course of and arising out of the claimant's employment, but [which] do not arise from or occur contemporaneously with a compensable physical injury."

The Equal Protection Clauses

**{¶ 6}** Pursuant to the Fourteenth Amendment to the United States Constitution, "[n]o State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." In like manner, Section 2, Article I, Ohio Constitution, provides that "[a]ll political power is inherent in the people. Government is instituted for their equal protection and benefit, and they have the right to alter, reform, or abolish the same, whenever they may deem it necessary; and no special privileges or immunities shall ever be granted, that may not be altered, revoked, or repealed by the General Assembly." Simply stated, the Equal Protection Clauses require that individuals be treated in a manner similar to others in like circumstances.

**{¶ 7}** The limitations placed upon governmental action by the federal and state Equal Protection Clauses are essentially the same. See *Am. Assn. of Univ. Professors, Cent. State Univ. Chapter v. Cent. State Univ.* (1999), 87 Ohio St.3d 55, 60, 717 N.E.2d 286 (confirming that Ohio's Equal Protection Clause

tracks its federal counterpart), reversed on other grounds (1999), 526 U.S. 124, 119 S.Ct. 1162, 143 L.Ed.2d 227; *Porter v. Oberlin* (1965), 1 Ohio St.2d 143, 151-152, 30 O.O.2d 491, 205 N.E.2d 363; *State ex rel. Struble v. Davis* (1937), 132 Ohio St. 555, 560, 8 O.O. 552, 9 N.E.2d 684.

{¶ 8} "A statutory classification which involves neither a suspect class nor a fundamental right does not violate the Equal Protection Clause of the Ohio or United States Constitutions [sic] if it bears a rational relationship to a legitimate governmental interest." *Menefee v. Queen City Metro* (1990), 49 Ohio St.3d 27, 29, 550 N.E.2d 181. Since no one argues that fundamental rights or suspect classes are implicated in this case, the correct standard to be applied is the rational-basis test. Under this test, " 'a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some "reasonable basis," it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality." *Lindsley v. Natural Carbonic Gas Co.* [1911]*,* 220 U.S. 61, 78 [31 S.Ct. 337, 55 L.Ed. 369].' " *State ex rel. Nyitray v. Indus. Comm.* (1983), 2 Ohio St.3d 173, 179, 2 OBR 715, 443 N.E.2d 962 (Krupansky, J., dissenting), quoting *Dandridge v. Williams* (1970), 397 U.S. 471, 485, 90 S.Ct. 1153, 25 L.Ed.2d 491.

{¶ 9} The rational-basis test involves a two-step analysis. We must first identify a valid state interest. Second, we must determine whether the method or means by which the state has chosen to advance that interest is rational. See *Buchman v. Wayne Trace Local School Dist. Bd. of Edn.* (1995), 73 Ohio St.3d 260, 267, 652 N.E.2d 952. A statute will not be held to violate the Equal Protection Clause, and this court will not invalidate a plan of classification adopted by the General Assembly, unless it is clearly arbitrary and unreasonable. *State ex rel. Lourin v. Indus. Comm.* (1941), 138 Ohio St. 618, 620, 21 O.O. 490, 37 N.E.2d 595, overruled on other grounds, *Caruso v. Alum. Co. of Am.* (1984),

15 Ohio St.3d 306, 15 OBR 436, 473 N.E.2d 818. Thus, provided that the statute is rationally related to a legitimate government interest, it will be upheld.

{¶ 10} Section 35, Article II of the Ohio Constitution vests in the General Assembly the right to establish a workers' compensation system. It provides: "For the purpose of providing compensation to workmen and their dependents, for death, injuries or occupational disease, occasioned in the course of such workmen's employment, laws may be passed establishing a state fund to be created by compulsory contribution thereto by employers, and administered by the state, determining the terms and conditions upon which payment shall be made therefrom. Such compensation shall be in lieu of all other rights to compensation, or damages, for such death, injuries, or occupational disease, and any employer who pays the premium or compensation provided by law, passed in accordance herewith, shall not be liable to respond in damages at common law or by statute for such death, injuries or occupational disease."

{¶ 11} McCrone claims that her equal protection rights have been violated because she is unable to benefit from workers' compensation coverage, since she has suffered no physical injury. First we must examine the statutory definition at issue.

Definitions and Classifications of Injury

{¶ 12} The General Assembly first defined the word "injury" for workers' compensation purposes as "any injury received in the course of, and arising out of, the injured employee's employment." G.C. 1465-68, 117 Ohio Laws 109, effective July 10, 1937. In 1959, the following italicized language was added to the term "injury" in R.C. 4123.01(C): " 'Injury' includes any injury, *whether caused by external accidental means or accidental in character and result,* received in the course of, and arising out of, the injured employee's employment." Am.Sub.H.B. No. 470, 128 Ohio Laws 743, 745, effective November 2, 1959.

**{¶ 13}** In 1986, R.C. 4123.01(C) was amended to define what constitutes a workers' compensation injury and what does not. Am.Sub.S.B. No. 307, 141 Ohio Laws, Part I, 718. R.C. 4123.01(C) provides:

**{¶ 14}** " 'Injury' includes any injury, whether caused by external accidental means or accidental in character and result, received in the course of, and arising out of, the injured employee's employment. 'Injury' does not include:

**{¶ 15}** "(1) Psychiatric conditions except where the conditions have arisen from an injury or occupational disease."

**{¶ 16}** Both before and after these amendments, courts have held that compensable injuries under the workers' compensation system require a physical component suffered by the claimant.[3] In *Malone v. Indus. Comm.* (1942), 140 Ohio St. 292, 23 O.O. 496, 43 N.E.2d 266, overruled on other grounds, *Village v. Gen. Motors Corp.* (1984), 15 Ohio St.3d 129, 15 OBR 279, 472 N.E.2d 1079, this court held that the term "comprehends *a physical* or traumatic damage or harm." (Emphasis added.) *Malone* at paragraph one of the syllabus. Conditions suffered by the claimant could be mental disorders, provided that they arose from a physical injury. See, e.g., *State ex rel. Clark v. Indus. Comm.* (2001), 92 Ohio St.3d 455, 459, 751 N.E.2d 967.

**{¶ 17}** The Bureau of Workers' Compensation itself has required a physical injury to the claimant before granting compensation for a psychiatric condition, both before and after the 1986 amendments. See, e.g., *Andolsek v. Kirtland* (1994), 99 Ohio App.3d 333, 335, 650 N.E.2d 911; *Connors v. Sterling Milk Co.* (1993), 98 Ohio App.3d 711, 649 N.E.2d 856; *Fields v. Youngstown* (May 30, 1989), Mahoning App. No. 88 C.A. 89, 1989 WL 59014.

---

3. See *Kerans v. Porter Paint Co.* (1991), 61 Ohio St.3d 486, 489, 575 N.E.2d 428; *Rambaldo v. Accurate Die Casting* (1992), 65 Ohio St.3d 281, 287, 603 N.E.2d 975; *Bunger v. Lawson Co.* (1998), 82 Ohio St.2d 463, 466, 696 N.E.2d 1029.

**{¶ 18}** In *Rambaldo v. Accurate Die Casting* (1992), 65 Ohio St.3d 281, 287, 603 N.E.2d 975, we discussed whether nonphysical injuries could be claimed as occupational diseases under R.C. 4123.01(C)(1). We held that "[i]n the absence of a clearly expressed legislative intent to recognize mental conditions caused solely by work-related stress as occupational diseases within the purview of the Workers' Compensation Act, such mental conditions are not compensable as occupational diseases." Id. at syllabus. Similarly, we now hold that psychological or psychiatric conditions that do not arise from a compensable physical injury or occupational disease are excluded from the definition of "injury" under R.C. 4123.01(C)(1) and from workers' compensation coverage.

**{¶ 19}** Because the General Assembly has classified mental conditions as compensable under workers' compensation laws only when they are accompanied by physical injury, the question becomes whether that classification violates the Equal Protection Clause of either the United States or Ohio Constitution.

Equal Protection Analysis

**{¶ 20}** Legislative enactments are presumed to be constitutional. *State ex rel. Dickman v. Defenbacher* (1955), 164 Ohio St. 142, 57 O.O. 134, 128 N.E.2d 59, paragraph one of the syllabus. However, the constitutional guarantee of equal protection requires that laws operate equally upon persons who are identified in the same class. *State ex rel. Patterson v. Indus. Comm.* (1996), 77 Ohio St.3d 201, 204, 672 N.E.2d 1008.

**{¶ 21}** With the exception of the Court of Appeals for Stark County in this case, all appellate decisions hold that the exclusion of mental injuries from the workers' compensation definition of "injury" does not violate the Equal Protection Clause of either the United States or Ohio Constitution.[4]

---

4. *Wood v. Ohio State Hwy. Patrol*, 156 Ohio App.3d 725, 2004-Ohio-1765, 808 N.E.2d 887; *Crutcher v. Butler Twp.* (1999), 135 Ohio App.3d 582, 735 N.E.2d 25; *Chrisulis v. U.S.X. Corp.*

**{¶ 22}** In this matter, the Court of Appeals for Stark County cited a case in which we held that a claimant could obtain workers' compensation benefits for a mental condition when a co-worker, rather than the claimant, had suffered a compensable physical injury: *Bailey v. Republic Engineered Steels, Inc.* (2001), 91 Ohio St.3d 38, 40, 741 N.E.2d 121. *McCrone v. Bank One Corp.*, 2nd Dist. No. 2003CA00092, 2004-Ohio-2538, 2004 WL 1111021, at ¶ 17. In *Bailey*, the claimant, a forklift operator, had accidentally killed his co-worker and claimed severe depression as a resulting work-related injury. In an atypical holding, the *Bailey* court held that "[a] psychiatric condition of an employee arising from a compensable injury or an occupational disease suffered by a third party is compensable under R.C. 4123.01(C)(1)." Id. at the syllabus. We now question that holding.

**{¶ 23}** When the entire definition of "injury" in R.C. 4123.01(C) is examined, it is clear that workers' compensation covers physical injuries and psychiatric injuries that arise directly out of physical injuries or occupational disease *to the claimant*. R.C. 4123.01(C) states:

**{¶ 24}** " 'Injury' includes any injury, whether caused by external accidental means or accidental in character and result, received in the course of, and arising out of, the injured employee's employment. 'Injury' does not include:

**{¶ 25}** "(1) Psychiatric conditions except where the conditions have arisen from an injury or occupational disease."

**{¶ 26}** Only three years before *Bailey*, this court recognized that the limited scope of the workers' compensation system requires limiting

---

(June 29, 1994), Lorain App. Nos. 93CA005599 and 93CA005618; *Andolsek v. Kirtland* (1994), 99 Ohio App.3d 333, 650 N.E.2d 911; *Connors v. Sterling Milk Co.* (1993), 98 Ohio App.3d 711, 649 N.E.2d 856; *Fields v. Youngstown* (May 30, 1989), Mahoning App. No. 88 C.A. 89; *Neil v. Mayfield* (July 22, 1988), Montgomery App. No. CA 10881; *Zaricki v. Laco Die Casting Co.* (July 8, 1982), Cuyahoga App. No. 44254.

compensability to claims involving physical injury to the claimant. *Bunger v. Lawson Co.* (1998), 82 Ohio St.3d 463, 465-466, 696 N.E.2d 1029. *Bunger* was unacknowledged by the *Bailey* majority. In *Bunger*, we stated: "The workers' compensation system was not designed to resolve every dispute that arises between employers and employees. It was designed to manage the compensation of individuals who suffer physical injuries or contract occupational diseases on the job." Id. at 465, 696 N.E.2d 1029.

{¶ 27} The facts in *Bunger* are similar to those now before us, for the claimant was seeking benefits for mental stress suffered as a result of a robbery at the workplace. We explained that certain cases were not covered by the workers' compensation system and observed, "A majority of states allow compensation to workers for some purely psychological injuries suffered in the workplace. * * * Ohio's General Assembly has yet to make such injuries compensable under workers' compensation statutes. * * * [P]sychological injuries are removed from the coverage of the Act * * *." Id. at 466, 696 N.E.2d 1029. As we also noted in *Rambaldo*: "No workers' compensation claim for a psychological condition, whether the condition was denominated as a disease or an injury, has been recognized by this court when the mental disease or injury was based solely on job-related stress." Id., 65 Ohio St.3d at 284, 603 N.E.2d 975.

{¶ 28} Thus, in allowing workers' compensation for a mental condition arising from a third party's injury, *Bailey* created an aberration. Nonetheless, even if we were to apply *Bailey*, physical injury is still required (albeit to a third party) before a claimant's mental condition becomes compensable. In McCrone's case, there was no physical injury whatsoever. Any reliance by the appellate court on *Bailey* was misplaced.

{¶ 29} The General Assembly has defined the types of injuries and diseases that are compensable through workers' compensation. Psychological or psychiatric conditions, without an accompanying physical injury or occupational

disease, are not compensable under R.C. 4123.01(C)(1). We must determine whether this exclusion has a rational basis to support it.

Rational-Basis Standard

{¶ 30} The guarantee of equal protection of the laws requires the existence of rational grounds for making a distinction between those within and those outside a designated class. *State v. Buckley* (1968), 16 Ohio St.2d 128, 45 O.O.2d 469, 243 N.E.2d 66, paragraph three of the syllabus; *Porter v. Oberlin*, 1 Ohio St.2d 143, 30 O.O.2d 491, 205 N.E.2d 363, paragraph two of the syllabus. The General Assembly has determined that those who have mental conditions along with a compensable physical injury or occupational disease are covered within the workers' compensation system, while those claimants with purely psychiatric or psychological conditions are excluded from coverage. Legislative enactments that do not involve a suspect classification are "presumptively rationally related to legitimate social and economic goals, unless the 'varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the legislature's actions were irrational.' " *State ex rel. Doersam v. Indus. Comm.* (1988), 40 Ohio St.3d 201, 203, 533 N.E.2d 321, quoting *Vance v. Bradley* (1979), 440 U.S. 93, 97, 99 S.Ct. 939, 59 L.Ed.2d 171.

{¶ 31} Here, the court of appeals rejected cost-based reasons to justify the statute, citing *State ex rel. Patterson v. Indus. Comm.* (1996), 77 Ohio St.3d 201, 672 N.E.2d 1008, and *State ex rel. Nyitray v. Indus. Comm.*, 2 Ohio St.3d at 177, 2 OBR 715, 443 N.E.2d 962. *McCrone*, Stark App. No. 2003CA00092, 2004-Ohio-2538, 2004 WL 1111021, at ¶ 24. As the dissenting judge in *McCrone* noted, however, in *Patterson* and *Nyitray,* the injuries suffered were already covered by workers' compensation, and the issues related to the amount of benefits to which the claimants were entitled. Id. at ¶32 (Edwards, J., dissenting). The *Patterson* constitutional challenge arose from an award to the dependent of a

work-relief employee that was much smaller than the amount awarded to a dependent of a non-work-relief employee for the same injury. *Patterson*, supra, at the syllabus. The *Nyitray* challenge was based upon the disparity between paying accrued temporary total disability benefits when an employee died of non-work-related causes yet withholding those benefits when death was due to work-related causes. Id. at the syllabus. We stated that "conserving funds is not a viable basis for denying compensation to those entitled to it." Id., 2 Ohio St.3d at 177, 2 OBR 715, 443 N.E.2d 962. Here, the question is not whether Kimberly McCrone is entitled to payment of a specific amount of accrued compensation, but whether she is entitled to coverage at all.

{¶ 32} "The problems of government are practical ones and may justify, if they do not require, rough accommodations, — illogical, it may be, and unscientific." *Metropolis Theater Co. v. Chicago* (1913), 228 U.S. 61, 69-70, 33 S.Ct. 441, 57 L.Ed. 730. "A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." *McGowan v. Maryland* (1961), 366 U.S. 420, 426, 81 S.Ct. 1101, 6 L.Ed.2d 393; *Dandridge v. Williams,* 397 U.S. at 485, 90 S.Ct. 1153, 25 L.Ed.2d 491. Our focus of inquiry, therefore, is whether there exist any reasonable bases for the disputed legislative classification.

Reasons for Classification of Injuries

{¶ 33} In support of R.C. 4123.01(C)(1), the BWC argues that it is reasonable to classify psychological and psychiatric conditions differently from those accompanied by physical injury because it is often difficult to prove the existence of, as well as the cause of, mental injuries. McCrone relies on *Ryan v. Connor* (1986), 28 Ohio St.3d 406, 28 OBR 462, 503 N.E.2d 1379, paragraph one of the syllabus (workplace injury resulting solely from stress is compensable under R.C. 4123.01(C)), seeming to suggest that we have rejected all problems of proof associated with psychological and psychiatric claims. However, she ignores

that it was a stress-related *physical* injury in *Ryan* that was held compensable. In mental injury claims, the problem arises of establishing the *existence* of that injury itself. Although a physical injury may or may not cause a psychological or psychiatric condition, it may furnish some proof of a legitimate mental claim. McCrone also cites *Schultz v. Barberton Glass Co.* (1983), 4 Ohio St.3d 131, 4 OBR 376, 447 N.E.2d 109, for the proposition that we have rejected problems of proof. But *Schultz* is a tort case, where fear of fraudulent claims was not considered to be a valid reason to disallow a claim for negligent infliction of emotional distress when a physical injury was not present. Id. at 133-134, 4 OBR 376, 447 N.E.2d 109. As *Schultz* was not a workers' compensation case, its reasoning is not applicable here.[5]

{¶ 34} The BWC also emphasizes the government's interest in making the most efficient use of a finite fund. Section 35, Article II of the Ohio Constitution gives the General Assembly the sole authority to determine coverage and to define which occupational injuries will be covered. *Rambaldo,* 65 Ohio St.3d at 288, 603 N.E.2d 975. Applying the rational-basis test to this justification for the exclusion of psychological or psychiatric conditions, we conclude that the state has a legitimate interest. It is reasonable to expect government to protect the self-supporting nature of the Workers' Compensation Fund, to distribute available resources so that benefit payments are kept at an adequate level for covered injuries rather than at an inadequate level for all potential disabilities, and to maintain a contribution rate not unduly burdensome to participating employers.[6]

---

5. The workers' compensation system, nonetheless, is not the exclusive potential remedy for mental injuries. This court determined in *Bunger v. Lawson Co.* (1998), 82 Ohio St.3d 463, 465-466, 696 N.E.2d 1029, that, because these claims are excluded from workers' compensation, an employee can bring a private claim in tort for which the employer does not have immunity.

6. This is the general rationale that has been accepted in the following cases: *Wood v. Ohio State Hwy. Patrol*, 156 Ohio App.3d 725, 2004-Ohio-1765, 808 N.E.2d 887; *Chrisulis v. U.S.X. Corp.*

{¶ 35} The BWC thus offers legitimate reasons that relate to the constitutional purpose underlying the workers' compensation statute. It cannot be said that denying workers' compensation benefits to claimants who simply allege mental disorders or emotional stress due to their jobs is irrational, particularly when the requirement of a physical injury enables the state to distribute the limited resources of the fund to disabilities determined by the state to be covered. McCrone has not shown that the reasons advanced to support the distinctions drawn by the General Assembly are invalid.

{¶ 36} We accept the appellant Bureau of Workers' Compensation's position and hold that R.C. 4123.01(C)(1) does not violate the Equal Protection Clauses of the United States and Ohio Constitutions by excluding from the definition of "injury" psychological or psychiatric conditions that do not arise from a compensable physical injury or occupational disease.

Conclusion

{¶ 37} Undoubtedly, psychological and psychiatric injuries may arise from an individual's employment, and we do not discount their impact on those who suffer them. The General Assembly, however, is the branch of state government charged by the Ohio Constitution to make public policy choices for the Workers' Compensation Fund. The legislatively created scheme sets forth a framework to determine which disabilities will be covered by the compensation system and which disabilities will not. Requiring that a mental disorder be incident to a physical injury or the contraction of an occupational disease is

(June 29, 1994), Lorain App. Nos. 93CA005599 and 93CA005618; *Andolsek v. Kirtland* (1994), 99 Ohio App.3d 333, 650 N.E.2d 911; *Connors v. Sterling Milk Co.* (1993), 98 Ohio App.3d 711, 649 N.E.2d 856; *Fields v. Youngstown* (May 30, 1989), Mahoning App. No. 88 C.A. 89; *Neil v. Mayfield* (July 22, 1988), Montgomery App. No. CA 10881; *Zaricki v. Laco Die Casting Co.* (July 8, 1982), Cuyahoga App. No. 44254.

rationally related to legitimate governmental interests. As we noted in *Bunger*, "[t]he workers' compensation system was not designed to resolve every dispute that arises between employers and employees. It was designed to manage the compensation of individuals who suffer physical injuries or contract occupational diseases on the job." Id., 82 Ohio St.3d at 465, 696 N.E.2d 1029. At some point, the General Assembly may determine that psychological or psychiatric conditions arising in the workplace are compensable without regard to attendant physical injury or occupational disease. Until then, however, claims for such conditions are limited to the extent that R.C. 4123.01(C)(1) provides.

{¶ 38} Appellee Kimberly McCrone has not met her burden to show that the state's reasons for the statutory exclusion are invalid. We therefore reverse the appellate court's finding of unconstitutionality, because R.C. 4123.01(C)(1) rationally advances legitimate governmental interests.

Judgment reversed

and cause remanded.

MOYER, C.J., LUNDBERG STRATTON, O'CONNOR and O'DONNELL, JJ., concur.

RESNICK and PFEIFER, JJ., dissent.

_____

**LUNDBERG STRATTON, J., concurring.**

{¶ 39} I agree with Justice Resnick's dissenting opinion that psychological injuries can be as real as physical injuries. However, I do not agree that a court has the authority to conclude that a psychological or psychiatric condition alone is a compensable workplace injury when the General Assembly's definition of "injury" expressly requires a physical component.

{¶ 40} First, there is no constitutional history to suggest that psychological injuries were contemplated by the drafters of Section 35, Article II of the Ohio Constitution at the time that section was written. Therefore, I believe

14

that it is the role of the General Assembly to determine whether a psychological or psychiatric condition resulting from workplace trauma should be a compensable injury or occupational disease for purposes of workers' compensation. In making that determination, I believe several issues should be subject to public debate: criteria for diagnosis, the types of conditions to be included, and how to distinguish the effects of a personal trauma from workplace trauma.

{¶ 41} The General Assembly should examine competing views on the topic, including expert testimony, and set goals, priorities, and standards before a purely psychological or psychiatric condition is defined as an "injury" for purposes of workers' compensation. Unlike conditions originating from an organic or chemical cause, trauma-related psychological and psychiatric conditions are very subjective and require balancing of evidence. Even modern medicine differs widely over diagnoses as well as treatment.

{¶ 42} Perhaps a purely psychological or psychiatric condition should be a compensable injury for purposes of workers' compensation; however, it is not mandated under Section 35, Article II of the Ohio Constitution or subject to coverage under the current workers' compensation laws. It is a matter for our General Assembly, and I urge our legislators to consider extending workers' compensation to these injuries . However, I would not mandate coverage by judicial fiat. Therefore, I reluctantly concur in the majority's decision.

O'CONNOR and O'DONNELL, JJ., concur in the foregoing opinion.

_____

**ALICE ROBIE RESNICK, J., dissenting.**

{¶ 43} Semantics aside, appellee, Kimberly McCrone, was injured in the course of her employment for Bank One Corporation, and her injury arose out of that employment. She was injured as a result of a bank robbery that occurred at her place of employment while she was the teller on duty. Her injury is real and

disabling, and its existence is supported by competent medical evidence. It is work-related in every sense of the word, it was accidental in character and result, and it has prevented appellee from returning to her former position of employment. It is not compensable under the Workers' Compensation Act, however, because it is psychological or mental in cause and effect, meaning that it has no "physical component" and was unaccompanied by physical trauma or damage. And yet this same injury—posttraumatic stress disorder—would be fully covered under the statute if only the bank robber had been considerate enough of appellee's compensation position to have shoved her during the robbery so that she could stub her toe and acquire the physical element that is deemed so essential to her right of recovery.

{¶ 44} Now what kind of rational explanation or legitimate state interest could possibly justify distinguishing the compensability of one posttraumatic stress disorder from another under equivalent life-threatening circumstances based on the fortuity of a stubbed toe? Or consider the situation in which the bank robber fires a gun at the teller but narrowly misses. Can it really be concluded with any measure of rationality that there are reasonable grounds for making compensability of the teller's posttraumatic stress disorder turn on whether she had the "good fortune" from a coverage standpoint to have twisted her back or sprained a finger upon recoiling at the prospect of being shot to death? Does the injured back or finger under these circumstances, or the stubbed toe in the previous scenario, really provide such independent verification of the posttraumatic stress disorder as to be rationally determinative of its compensability?

{¶ 45} The answers to these questions are as obvious as the physical-injury prerequisite to coverage is absurd. Indeed, it is unsatisfactory, to say the least, that the majority is constrained to fall back on the difficulty-of-proof/conservation-of-resources rationale in order to justify the denial of coverage

to an entire class of work-related injuries. Not only are workers' compensation claims routinely amended to include psychological injuries resulting from previously allowed physical injuries, but the time has long since passed when denying recoveries for "purely psychological" injuries can be excused on grounds of evidentiary difficulties or illusory claims. We are no longer living in the 19th century when it was considered impossible to accurately diagnose psychological injuries.

{¶ 46} As Professor Larson explains:

{¶ 47} "[T]here is no really valid distinction between physical and 'nervous' injury. Certainly modern medical opinion would support this view, and insist that it is no longer realistic to draw a line between what is 'nervous' and what is 'physical.' It is an old story, in the history of law, to observe legal theory constantly adapting itself to accommodate new advances and knowledge in medical theory. Perhaps, in earlier years, when much less was known about mental and nervous injuries and their relation to 'physical' symptoms and behavior, there was an excuse, on grounds of evidentiary difficulties, for ruling out recoveries based on such injuries, both in tort and in workmen's compensation. But the excuse no longer exists. And therefore a state which would withhold the benefits of workers' compensation from a worker who, before an obvious industrial mishap, was a competent, respected iron-worker [or bank teller], and after the mishap was totally incapacitated to do the only job he or she was trained for, *would nowadays be doing unjustifiable violence to the intent of the workers' compensation act, for reasons that are without support in either legal or medical theory*." (Emphasis added.) 3 Larson's Workers' Compensation Law (1999) 56-17 to 56-18, Section 56.04[1].

{¶ 48} In *Bunger v. Lawson Co.* (1998), 82 Ohio St.3d 463, 696 N.E.2d 1029, Justice Lundberg Stratton explained:

{¶ 49} "A psychological injury is as real and may be as devastating as a physical injury. Mental trauma that results from a robbery where one believes that one may be injured or killed can be serious and genuinely debilitating. Yet psychological injuries without accompanying physical injury are specifically excluded from compensable injuries under the workers' compensation statutes." Id. at 467, 696 N.E.2d 1029 (Lundberg Stratton, J., concurring).

{¶ 50} But if "[a] psychological injury may exist without a concurrent physical injury," as Justice Lundberg Stratton suggested in *Bunger*, id., the majority's current justification for the exclusion, i.e., that "[i]n mental injury claims, the problem arises of establishing the *existence* of the injury itself" (emphasis sic), is implausible. Moreover, the majority's cost-cutting justification rings hollow. Since when is reducing governmental costs sufficient to nullify the basic protections afforded by the Ohio Constitution? Is there a specific dollar amount of savings that must be realized before ignoring the Equal Protection Clause is justified?

{¶ 51} I dissent.

PFEIFER, J., concurs in the foregoing opinion.

_____

**PFEIFER, J., dissenting.**

{¶ 52} This case demonstrates the failure of *Bunger v. Lawson Co.* (1998), 82 Ohio St.3d 463, 696 N.E.2d 1029, to allow a meaningful chance for recovery for workers psychologically harmed by violent workplace attacks. In *Bunger*, a case factually similar to this one, Rachel Bunger had been the victim of a holdup while working at a Dairy Mart. She sued her employer in common pleas court for negligence and also sought workers' compensation benefits for her psychological injuries. This court held that while Ohio's workers' compensation statutes did not allow recovery for purely psychological injuries, Bunger could pursue a negligence claim against her employer. We found that R.C. 4123.74's

grant of immunity from civil suits could not apply to a type of workplace injury that is not included in the statutory definition of compensable injuries. Simply, an employer could not be immune from a civil suit for an injury that was not eligible for workers' compensation benefits.

{¶ 53} Because the case was before us on a Civ.R. 12(B)(6) dismissal and the plaintiff had pleaded two different causes of action, the *Bunger* court was able to resolve the case without having to pass on the constitutionality of Ohio's workers compensation law. Although *Bunger* recognized that a cause of action for negligence in such situations is available, from a practical standpoint such a cause of action is not often useful. The real-world truth is that employers can do only so much to protect their employees from the evil that men do; the fault for the trauma done to an employee in a robbery case usually lies entirely with the thug committing the felonious act. Therefore, a cause of action against an employer for negligence is usually unwinnable, and accordingly, an employee is left with no compensation for her very real workplace injury.

{¶ 54} That result is all the more unacceptable because workers' compensation benefits are in fact available for psychological injuries. Those injuries are compensable through workers' compensation as long as they are accompanied by a physical injury. R.C. 4123.01(C)(1). The majority writes, "Although a physical injury may or may not cause a psychological or psychiatric condition, it may furnish some proof of a legitimate mental claim," that is, a physical injury may be proof of a work-related, cognizable triggering event causing the psychological trauma. The injury tells us that something happened. A physical injury is merely evidence of the event — it is the triggering event that is significant. But injuries are not the only possible evidence of traumatic events.

{¶ 55} If the criminal in this case had given a paper cut to the teller when handing over his holdup note, would that have made her claims of mental distress easier to prove? Certainly not. There is no rational basis to treat injured

employees differently when both the physically injured and the nonphysically injured employees each can identify the genesis of their psychological condition. A cognizable triggering event, whether resulting in physical injury or not, is the proper determinant for proof of psychological injury. A professional can evaluate the injury and the event to determine whether compensation is appropriate.

{¶ 56} Finding the workers' compensation statutes unconstitutional as they relate to workers psychologically harmed by a cognizable triggering event would not open the floodgates for compensation for all forms of mental distress. The court's analysis and holding in this case should focus on the certain type of psychological injuries alleged here, in *Bunger*, and in *Bailey v. Republic Engineered Steels, Inc.* (2001), 91 Ohio St.3d 38, 741 N.E.2d 121 (worker suffered severe depression as a result of accidentally killing coworker). We are not dealing in these cases with a person claiming depression because she is bored with her job and really wants to be an actress. This case, *Bunger,* and *Bailey* all present instances in which the psychological injuries were demonstrably tied to a specific traumatic, accidental event in the workplace. They do not present the same issues of proof as "I hate my job"-type depression masquerading as a workers' compensation claim. Allowing benefits in this case does not mean across-the-board compensation for all claims of mental illness. Allowing benefits in this case allows for equal treatment of people with the same, equally provable injuries.

{¶ 57} Accordingly, I would find that R.C. 4123.01(C)(1) violates the Equal Protection Clauses of the United States and Ohio Constitutions in this case.

_____

Brian Law Offices, Richard F. Brian, and Steven J. Brian, for appellee.

Jim Petro, Attorney General, Douglas R. Cole, State Solicitor, Stephen P. Carney, Senior Deputy Solicitor, Diane Richards Brey and Franklin E. Crawford,

Deputy Solicitors, and J. Quinn Dorgan, Assistant Solicitor, for appellant, Administrator, Bureau of Workers' Compensation.

Buckingham, Doolittle & Burroughs, L.L.P., Robert C. Meyer, and Brett L. Miller, for Bank One Corporation.

Philip J. Fulton Law Office, Philip J. Fulton, and William A. Thorman III, urging affirmance for amicus curiae Ohio Academy of Trial Lawyers.

Stewart Jaffy & Assoc. Co., L.P.A., Stewart R. Jaffy, and Marc J. Jaffy, urging affirmance for amicus curiae Ohio AFL-CIO.

_____